[Crim. No. 16849. Second Dist., Div. Five. Apr. 23, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
ARNOLD JOSEPH VERBIESEN, Defendant and Appellant.

## COUNSEL

Alan Saltzman and Martha Golden for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Laurence M. Sarnoff, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**FRAMPTON, J.***—

### Statement of the Case

Defendant was charged by information with two counts of grand theft (counts 1 and 2) involving motor vehicles (Pen. Code, § 487, subd. 3), and with two counts of receiving stolen property (counts 3 and 4, Pen. Code, § 496), relating to the same motor vehicles alleged to have been stolen in

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

counts 1 and 2 of the information. Defendant's motion to dismiss under section 995, Penal Code was denied. A plea of not guilty was entered. A motion to suppress evidence under section 1538.5 of the Penal Code, submitted on the transcript of the evidence taken at the preliminary examination, was denied.

A jury trial was duly waived, and the cause was submitted on the transcript of the evidence taken at the preliminary examination. A second motion to suppress was made under section 1538.5 of the Penal Code, and was denied. The defendant was found not guilty on counts 1 and 2 and was found guilty on counts 3 and 4.

A probation report was ordered and at the time set for hearing on the matter of probation, the trial court referred the matter to the Director of the Department of Corrections for review regarding placement of the defendant pursuant to the provisions of section 1203.03 of the Penal Code, and continued further proceedings. Upon defendant's return from the Department of Corrections, probation was denied, and he was sentenced to state prison on each of the counts 3 and 4 of the information, such sentences to run concurrently with each other. The appeal is from the judgment.

### Statement of Facts

On February 19, 1968, Joseph Hajec, who resided at 1200 Riverside Drive in the City of Burbank, was the owner of a 1967 Jaguar, bearing license plate number TVG 655. At 8 p.m. of that day, he parked his car at 3251 Cahuenga Boulevard, just off the Hollywood Freeway, and locked it. He returned at 10:30 p.m. to where he had parked his car and found it missing. He had given no one permission to take the car. Mr. Hajec's vehicle registration, number A 2319306 (exhibit 1), was in the car when he parked it.

For approximately two years prior to March 1968, Mrs. Edmond Shaffer had rented a private garage owned by her to one Richard Dagress. About February 1968, Mr. Dagress asked to transfer his tenancy from a garage that he was then renting from Mrs. Shaffer to a private garage owned by the latter at 1506 Glendale Boulevard in the City of Los Angeles. Dagress paid the rent on these premises for the period of February 21 to March 21, 1968.

Sometime in March 1968, Dagress told Mrs. Shaffer that he was leaving town and that a friend of his was taking over the garage. Mrs. Shaffer had no contact with Dagress after this conversation.

On April 4, 1968, Michael Siegal, who lived at 7225 Hollywood Boulevard, was at work at the Cedars Sinai Medical Center. He owned a 1966

Jaguar, bearing Illinois license plate number 893557 (exhibit 2). His wife had the use of this car on April 4. When Mr. Siegal returned from work on April 5, the Jaguar was missing from its usual parking place in the garage of his apartment. Mrs. Siegal alone had permission to drive the car. Mrs. Siegal testified that she had parked the Jaguar in the garage of their apartment about 4 p.m. on April 4. She had not given anyone permission to take the car.

On April 16, 1968, Mrs. Shaffer gave the defendant a rent receipt for $10 for rental of the garage at 1506 Glendale Boulevard, covering the period from March 21 to May 1. This was the same garage that Dagress had rented just prior to his telling Mrs. Shaffer that he was leaving town. At that time the defendant gave Mrs. Shaffer his telephone number and address which she recorded on her copy of the receipt. The garage is across the street, and Mrs. Shaffer could not see it from her home.

On April 26, 1968, having received information from Sergeant Baruk, of Van Nuys detectives, that an Arnold Verbiesen was using the garage at 1506 Glendale Boulevard to store and strip stolen Jaguars, Brian Murphy, a police officer for the City of Los Angeles, assigned to the Metropolitan Division, placed the garage under surveillance. On this occasion he observed a double garage at the rear of 1506 Glendale Boulevard. Officer Murphy did not observe any activity during approximately two hours that he watched the premises. However, as he approached the garage, he observed a double type garage door with an opening between the doors. Through this opening he observed a blue Jaguar bearing Illinois license number 893557. Officer Murphy ran this license number and it came back to him as a "Hollywood stolen." He attempted to find out who owned the garage from people at two neighboring locations but received no response. He testified that from and after April 26, 1968, he knew that the car he had observed inside the garage was a stolen vehicle. He again placed the garage under surveillance about three days after the 26th, and again looked inside the garage but observed no change. He had the garage under surveillance five or six times between April 26 through June 12, 1968. On June 12, 1968, Officer Murphy noticed that the whole front assembly of the Jaguar had been removed, the wheels were gone, and the vehicle appeared to be jacked up off the floor. At no time during his surveillance of the garage did Officer Murphy see the defendant or anyone answering the description of Dagress, given to him, in or about the premises.

After May 1, 1968, Mrs. Shaffer received no more rent money from the defendant. During May and June she called the telephone number given her by the defendant, but was unable to contact him.

On June 12, 1968, Officer Murphy learned that Mrs. Shaffer owned the

garage. He approached her, and in response to his inquiry she stated that she was the owner of the property, and that she had rented the garage to a party named A. Verbiesen. She told Officer Murphy that she had not received the rent money for the garage, and that the rent was in arrears a month and a half.

Officer Murphy asked permission of Mrs. Shaffer to enter the garage and she gave such permission. After receiving permission, Officer Murphy and Mrs. Shaffer went to the garage, they removed the lock and entered. Inside the garage Officer Murphy observed a partially stripped 1966 blue Jaguar bearing the Illinois license plate of the vehicle described by the witness Siegal. A 1967 Jaguar engine block was found in an area to the rear of the 1966 Jaguar. An identification plate was found lying next to the engine block, and Joseph Hajec's registration slip was found lying next to the plate. The windshield of the 1966 Jaguar had been removed and was lying on the floor. The 1966 Jaguar was supported on jacks, two jacks on either side of the vehicle.

At the time Officer Murphy removed the lock and entered the garage, he had neither a search warrant nor a warrant of arrest.

There was no testimony offered on behalf of the defendant.

### Contentions on Appeal

Defendant urges that (1) illegally obtained evidence was admitted in violation of his rights protected by the Fourth Amendment to the United States Constitution, and by article I, section 19 of the Constitution of the State of California, and (2) the evidence is insufficient to sustain the judgment.

### The Search and Seizure

The record discloses that on April 26, 1968 Officer Murphy possessed sufficient information to give him probable cause to believe that the locked garage contained a stolen vehicle. It is also clear from the record that between April 26 and June 12, 1968, when Officer Murphy removed the lock and entered the garage, sufficient time had elapsed to have obtained a search warrant authorizing the search of the garage and the seizure of its contents. There is nothing in the record to indicate a probable change in the situation during the time necessary to obtain a search warrant. The search was made entirely separate and independent of an arrest. The garage doors were locked and the landlord had no key, indicating that the defendant had the exclusive right to the possession of and access to the structure, subject to the right of the landlord to evict him in accordance with the law. Nothing in the record indicates that Mrs. Shaffer, in giving

her consent for Officer Murphy to remove the lock and enter the garage, was attempting to exercise self help in evicting the defendant without resorting to the usual proceeding in unlawful detainer, and there is nothing to show that Officer Murphy believed in good faith that Mrs. Shaffer had authority to grant him permission to remove the lock and enter the structure. (Cf. *People* v. *Superior Court,* 3 Cal.App.3d 648 [83 Cal.Rptr. 732].)

The Supreme Court of the United States, in quoting with approval from the language in *Johnson* v. *United States,* 333 U.S. 10 [92 L.Ed. 436, 68 S.Ct. 367], held that " 'The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime. Any assumption that evidence sufficient to support a magistrate's disinterested determination to issue a search warrant will justify the officers in making a search without a warrant would reduce the Amendment to a nullity and leave the people's homes secure only in the discretion of police officers. . . . The right of officers to thrust themselves into a home is also a grave concern, not only to the individual but to a society which chooses to dwell in reasonable security and freedom from surveillance. When the right of privacy must reasonably yield to the right of search is, as a rule, to be decided by a judicial officer, not by a policeman or government enforcement agent.' " (*Chapman* v. *United States,* 365 U.S. 610, 614-615 [5 L.Ed.2d 828, 832, 81 S.Ct. 776].) Belief, however well founded, that an article sought is concealed in a dwelling house furnishes no justification for a search of that place without a warrant. And such searches are unlawful notwithstanding facts unquestionably showing probable cause. (*Agnello* v. *United States,* 269 U.S. 20 [70 L.Ed. 145, 149, 46 S.Ct. 4]; *Chapman* v. *United States, supra* [5 L.Ed.2d at p. 831]; see also *People* v. *Henry,* 65 Cal.2d 842, 845 [56 Cal.Rptr. 485, 423 P.2d 557]; *People* v. *Marshall,* 69 Cal.2d 51, 57-58 [69 Cal.Rptr. 585, 442 P.2d 665]; *People* v. *Ramsey,* 272 Cal.App.2d 302, 311 [77 Cal.Rptr. 249].)

We are satisfied that the removal of the lock from the door of the garage which was under the exclusive occupancy and control of the defendant, and the search and seizure which followed, was, under the circumstances of this case, a violation of the defendant's rights guaranteed under the Fourth Amendment to the United States Constitution, and the evidence seized as a result of such search was inadmissible in evidence. The incrimi-

nating evidence so seized was the backbone of the prosecution's case which led to the judgment of conviction.

Under the facts of this case and the law applicable thereto, we are compelled to reverse the judgment. In view of the foregoing conclusion, we deem it unnecessary to comment on the question of the insufficiency of the evidence to sustain the judgment.

The judgment is reversed.

Kaus, P. J., and Reppy, J., concurred.