[No. F010691. Fifth Dist. Oct. 11, 1989.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES RICHARD VEIGA, Defendant and Appellant.

[No. F010836. Fifth Dist. Oct. 11, 1989.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL WALLACE KEELING, Defendant and Appellant.

[Opinion certified for partial publication.‡]

‡Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts I-C, I-D, I-E and II.

**COUNSEL**

Bruce Hudson Towne and Carlo Andreani, under appointments by the Court of Appeal, for Defendants and Appellants.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Arnold O. Overoye, Edmund D. McMurray and Jesse Witt, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**DIBIASO, J.**—After the trial court denied their Penal Code[1] section 995 motions to set aside the information, defendants Keeling and Veiga pled guilty, respectively, to violations of Health and Safety Code sections 11366 and 11353. On their consolidated appeals from orders granting probation, they contend the court erred in denying their section 995 motions. In the published portion of this opinion, we will hold that police entry onto the premises of which the defendants were co-occupants was validated by the consent of an absent co-occupant, notwithstanding the lack of express consent from defendants themselves. Thus, the court properly denied the section 995 motions.

Between 7 and 8 p.m., July 22, 1986, Cynthia Graham arrived home to discover that her brother, Keeling, was holding a party at the Sonora house in which they resided with their grandmother. Graham and the grandmother paid the rent. Keeling had been living there for nine to ten months; Veiga had been staying there as Keeling's guest for the past two days, with Graham's permission.

---

[1] All statutory references are to the Penal Code unless otherwise indicated.

On entry, Graham saw beer in the living room and drug paraphernalia in Keeling's bedroom. The paraphernalia included a mirror with white dust, a razor, and a straw. Veiga invited Graham to "do a line." She refused, left the residence, and drove to her uncle's house, where she called the police. At about 9 p.m., she spoke by phone to Officer Mathis.

Mathis drove by the house several times. The front door was on Poplar Street. A group of people were in the living room. The front door area was dark and situated so that the living room occupants could see anyone who approached that door. At about 10 p.m., Mathis spoke again by phone with Graham, who told him that the party involved drinking and "coke" use. She instructed him to "put a stop to" the party. He interpreted this as authorizing him to "do whatever was necessary," but not that he could search the house.

After complying with knock-notice requirements, Mathis entered the house and saw certain contraband items in plain view. Other officers arrived and assisted in the search of the house and its occupants. The officers made other plain-view observations.

## DISCUSSION

### I. SEARCH AND SEIZURE ISSUES[2]

#### A. *Standard of Review*

█ Upon review of the denial of a section 995 motion, we must "disregard[ ] the ruling of the superior court" and assess directly the magistrate's decision holding the defendants to answer. (*People* v. *Laiwa* (1983) 34 Cal.3d 711, 718 [195 Cal.Rptr. 503, 669 P.2d 1278].) In so doing, we "must draw every legitimate inference in favor of the information, and cannot substitute [our] judgment as to the credibility or weight of the evidence for that of the magistrate." (*Ibid.*; see also *People* v. *Hall* (1971) 3 Cal.3d 992, 996 [92 Cal.Rptr. 304, 479 P.2d 664]; *People* v. *Maltz* (1971) 14 Cal.App.3d 381, 389 [92 Cal.Rptr. 216].) However, "it is the ultimate responsibility of [the] court to measure the facts as found by the trier [of fact] against constitutional standards" of reasonableness. (*People* v. *Aldridge* (1984) 35 Cal.3d 473, 477 [198 Cal.Rptr. 538, 674 P.2d 240].) In so doing, we do not defer to the magistrate's or the trial court's conclusions of law, but instead exercise our independent judgment concerning the pertinent legal issues.

---

[2] Because the issues were raised by section 995 motions, we evaluate the trial court's ruling solely upon the record made at the preliminary hearing before the magistrate. (*People* v. *Sahagun* (1979) 89 Cal.App.3d 1, 20 [152 Cal.Rptr. 233].)

(*People* v. *Leyba* (1981) 29 Cal.3d 591, 597 [174 Cal.Rptr. 867, 629 P.2d 961]; *People* v. *Laiwa, supra,* 34 Cal.3d at p. 718; *People* v. *Ramsey* (1988) 203 Cal.App.3d 671, 679 [250 Cal.Rptr. 309].)

## B. *Consent*

 The core issue, about which the parties disagree, is whether Graham effectively consented to Mathis's initial entry. The People argue that the consent was operative because Graham was a co-occupant in joint possession of the house. Defendants counter that her consent was invalid because 1) she was away from the home when Mathis entered, and 2) he failed to secure their own express consent as co-occupants present on the premises. As noted, we will hold the permission was valid, notwithstanding Graham's absence from the property when Mathis entered and the lack of express consent from defendants.[3]

 A valid consent to enter and search eliminates the need for either a warrant or probable cause. (*People* v. *Reed* (1967) 252 Cal.App.2d 994, 995 [61 Cal.Rptr. 60]; *People* v. *Wilcox* (1969) 276 Cal.App.2d 414, 416 [81 Cal.Rptr. 60]; *Vandenberg* v. *Superior Court* (1970) 8 Cal.App.3d 1048, 1053 [87 Cal.Rptr. 876].) A search based upon consent is lawful if, from the facts presented to the officer, he reasonably believed the occupant of the premises had authority to, and did in fact, consent to the entry and search.[4] (*People* v. *Reed, supra,* 252 Cal.App.2d at p. 996; *United States* v. *Hamilton* (9th Cir. 1986) 792 F.2d 837, 842.)

 This case raises the issue of consent to enter, not the issue of consent to enter *and* search or the scope of any consent to search. However, because police *entry* into a residence raises Fourth Amendment concerns (*Steagald* v. *United States* (1981) 451 U.S. 204, 212, 214 [68 L.Ed.2d 38, 45-46, 46-47, 101 S.Ct. 1642]), cases which involve third party consents to enter *and* search are relevant. Adherence to the policy underlying the Fourth Amendment, that is, the protection of the privacy of the individual

---

[3] We assume that the nature of Graham's occupation of the premises was such as to invest her with the authority to direct a police entry and that Keeling and Veiga were no higher on the "hierarchy" of occupation than Graham. (Cf. *People* v. *Wilcox* (1969) 276 Cal.App.3d 414, 418 [81 Cal.Rptr. 60].) Our decision thus applies only to the situation where the co-inhabitants have equal common authority over the premises. It does not apply to those cases where the rights of occupancy of the residents may not be equivalent, such as, for example, parent-child (see *People* v. *Wilcox, supra; Vandenberg* v. *Superior Court* (1970) 8 Cal.App.3d 1048 [87 Cal.Rptr. 876]; *People* v. *Jacobs* (1987) 43 Cal.3d 472, 481 [233 Cal.Rptr. 323, 729 P.2d 757]); landlord-tenant (see *People* v. *Escudero* (1979) 23 Cal.3d 800, 808 [153 Cal.Rptr. 825, 592 P.2d 312]; *People* v. *Verbiesen* (1970) 6 Cal.App.3d 938 [86 Cal.Rptr. 320]); and bailor-bailee (see *People* v. *Pranke* (1970) 12 Cal.App.3d 935, 942 [91 Cal.Rptr. 129]).

[4] The defendants do not contest that the officer reasonably believed Graham had the authority to, and did, consent to the entry.

against unreasonable governmental intrusion (*Katz* v. *United States* (1987) 389 U.S. 347, 350 [19 L.Ed.2d 576, 581, 88 S.Ct. 507]; *United States* v. *Ciraolo* (1986) 476 U.S. 207, 220 [90 L.Ed.2d 210, 221, 106 S.Ct. 1809]), is compelled in both situations.

Until recently, the watershed California case was *Tompkins* v. *Superior Court* (1963) 59 Cal.2d 65 [27 Cal.Rptr. 889, 378 P.2d 113]. There, a third party, arrested away from his residence, gave the police the keys to his apartment so that they might confirm his denial that contraband was located there. The police proceeded to the apartment and, as they were attempting to use the keys, the defendant opened the door, which was still latched by a chain. When the police identified themselves, the defendant made a motion with his arm and slammed the door shut. The police kicked in the door, entered and saw a narcotic substance. A later, further search turned up more contraband, and the defendant was arrested. Upon defendant's motion to suppress, the prosecutor contended that the third party co-occupant, previously arrested at another locale, had authorized the entry.

The Supreme Court decided the evidence should have been suppressed. Noting that a joint occupant's right of privacy in his home is not completely at the mercy of another with whom he shares legal possession, the court held: "[T]hat one joint occupant who is away from the premises may not authorize police officers to enter and search the premises over the objection of another joint occupant who is present at the time, at least where as in this case no prior warning is given, no emergency exists and the officer fails even to disclose his purpose to the occupant who is present or to inform him that he has the consent of the absent occupant to enter." (*Tompkins* v. *Superior Court, supra,* 59 Cal.2d at p. 69.)

After *Tompkins* came *People* v. *Shelton* (1964) 60 Cal.2d 740 [36 Cal.Rptr. 433, 388 P.2d 665]. The consenting cotenant (a codefendant) was arrested away from his apartment. When asked by the officers if they could "take a look" in his residence for narcotics, he said, "All right, go ahead." The officers took him to the apartment, knocked on the door, identified themselves as police officers, and demanded entry. When the codefendant opened the door the police entered and arrested her. A subsequent search netted narcotics. The Supreme Court held that "[t]he search cannot be justified on the ground that [the co-occupant] consented to it" (*id.* at p. 745), and citing *Tompkins* said: "[E]ven if Shelton had voluntarily consented to the search, his consent could not justify the invasion of his joint occupant's privacy that occurred when the officer demanded that the door be opened." (*Ibid.*)

*Shelton* was followed by *People* v. *Smith* (1966) 63 Cal.2d 779 [48 Cal.Rptr. 382, 409 P.2d 222], where the cotenant who authorized the entry

and search was away from the premises at the time of the police entry. The defendant co-occupant was also absent. Upholding the search, the court distinguished cases such as *Tompkins* because: "they dealt with situations in which one joint occupant, away from the premises, purported to authorize police officers to enter and search the premises over the express objection of another joint occupant who was actually on the premises at the time." (*Id.* at p. 799.)[5]

In *Duke* v. *Superior Court* (1969) 1 Cal.3d 314 [82 Cal.Rptr. 348, 461 P.2d 628], the defendant's wife, who told the police the defendant had beaten her and had a bottle of red pills in the bathroom, gave the police permission to enter her home. She did not accompany the officers to the house. The police knocked on the front door, but did not identify themselves and did not verbally demand admittance. After waiting about 30 seconds with no response, they opened the closed but unlocked door and walked into the bedroom where the defendant was sleeping. After waking him and speaking briefly with him, the officers searched the bathroom and found a container with red pills in it. Defendant was then arrested.

The issue before the court was whether compliance with Penal Code section 844 was excused by virtue of the wife's alleged authorization to enter. Holding to the contrary, the court relied on *Tompkins*: "The reasoning of *Tompkins* compels the conclusion that a person in common ownership or control, such as a wife, who is not within the premises cannot give such consent to enter and search the premises as to excuse the police from complying with the requirements of section 844." (*Duke* v. *Superior Court, supra,* 1 Cal.3d at p. 322.)

The dissent by three justices, led by Justice Mosk, took the position the wife had not only "requested" that the officers enter in order to arrest the husband, but that she had also told them "the front door was unlocked" to assist in the admittance. This, in the dissent's view, distinguished *Tompkins,* because the wife, a joint occupant "not only authorized the police officers to enter and search the premises, she affirmatively made the initial contact and request, and there was no entry made over the objection of the other occupant." On that basis, and also because they felt certain other facts presented an emergency justifying immediate entry, the dissenters opined that "ritualistic compliance with section 844" was not required. (1 Cal.3d at pp. 326-327.)

---

[5] Several incriminating items were found in the home. The opinion does not disclose the interior location where the evidence was discovered, nor does it indicate whether the evidence was uncovered in a room or other portion of the premises solely occupied by the defendant. (Cf. *People* v. *Cruz* (1964) 61 Cal.2d 861, 866-867 [40 Cal.Rptr. 841, 395 P.2d 889].) We must assume the items were found in a "common area."

The United States Supreme Court's controlling decision is *United States* v. *Matlock* (1973) 415 U.S. 164 [39 L.Ed.2d 242, 94 S.Ct. 988]. The defendant was arrested in the front yard of a house in which he, along with a Mrs. Graff and others, lived. The arresting officers, who did not ask the defendant which room he occupied or whether he would consent to a search, were voluntarily admitted to the residence by Mrs. Graff after defendant's arrest. A search was made of the interior, including the bedroom which Mrs. Graff indicated was jointly occupied by the defendant and herself. In a closet, the officers found stolen currency. Defendant was later indicted for bank robbery. He moved to suppress the seized money. The trial court granted the motion, and the Court of Appeals affirmed. The Supreme Court reversed and held, after surveying prior cases: "These cases at least make clear that when the prosecution seeks to justify a warrantless search by proof of voluntary consent, it is not limited to proof that consent was given by the defendant, but may show that permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected." (*United States* v. *Matlock, supra,* at p. 171 [39 L.Ed.2d at pp. 249-250].)

Such "common authority," said the court, does not rest upon the hoary principles of the law of property. Instead, it ". . . rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched." (415 U.S. at p. 171, fn. 7 [39 L.Ed.2d at p. 250].)

In *Matlock,* although they were aware that defendant resided in the home at the time of his arrest, and although he was readily available to them, the officers never did ask the defendant which room he occupied or whether he would consent to a search.

In our view, the California Supreme Court's most significant opinion in the area since *Tompkins* is *People* v. *Haskett* (1982) 30 Cal.3d 841 [180 Cal.Rptr. 640, 640 P.2d 776], which was authored by the lead dissenter in *Duke,* Justice Mosk. The defendant was arrested and detained on the front porch of his home. His wife came to the door and asked the officers who they were and what they wanted. They answered that they were investigating a murder and wanted to enter the house and speak to her about the crime. In the presence of her husband, who remained silent, the wife agreed to the request. After the officers were inside, the wife consented to a search of the house, which initially turned out to be fruitless. One of the officers then went back outside, placed the defendant in a patrol car, and asked for defendant's consent to search, which was refused. The officer went back

into the house, continued to inspect commonly occupied areas, again with the wife's permission, and ultimately discovered certain incriminating items. Referring to *United States* v. *Matlock,* the California Supreme Court noted the United States Supreme Court "recognized that law enforcement authorities need not seek the consent of all co-occupants before searching their commonly held property: 'any of the co-inhabitants has the right to permit the inspection . . . and . . . the others have assumed the risk that one of their number might permit the common area to be searched.'" (*People* v. *Haskett, supra,* 30 Cal.3d at p. 856.)

"In this case, however, the police made their identity and purpose known to defendant, in his presence sought and obtained his wife's consent to enter, and validly arrested and removed him from the house before he expressly refused consent to search. Under these circumstances, there is no basis for defendant's contention that his wife's consent was inadequate. (*Matlock, supra,* at p. 171; *United States* v. *Sumlin* (6th Cir. 1977) 567 F.2d 684, cert. den. 435 U.S. 932 [55 L.Ed.2d 529, 98 S.Ct. 1507]; *People* v. *Cosme* (1979) 48 N.Y.2d 286 [422 N.Y.S.2d 652, 397 N.E.2d 1319].)" (*People* v. *Haskett, supra,* 30 Cal.3d at p. 857, fn. omitted.)

In so stating the court disapproved of dicta in *People* v. *Engel* (1980) 105 Cal.App.3d 489, 498-500 [164 Cal.Rptr. 454], and *People* v. *Reynolds* (1976) 55 Cal.App.3d 357, 369 [127 Cal.Rptr. 561], which suggested that a present co-occupant's lack of consent would prevent a valid search. (*Haskett, supra,* at p. 857, fn. 6.)[6]

The court did clearly stake out limitations on the power of a cotenant to consent to an entry or search: "We have recognized that the assumption of risk inherent in co-occupancy has its limits. An entry or search, even though authorized by a co-occupant, may be so intrusive that it belies the conclusion that the parties assumed or even contemplated the risk of its occurrence by deciding to jointly inhabit the subject residence. For instance, an absent cotenant cannot authorize the police to burst into occupied premises unannounced if there is no emergency justifying such a frightening intrusion. (*Tompkins* v. *Superior Court* (1963) 59 Cal.2d 65, 69 [27 Cal.Rptr. 889, 378 P.2d 113]; see also *People* v. *Shelton* (1964) 60 Cal.2d 740, 745 [36 Cal.Rptr. 433, 388 P.2d 665]; *Duke* v. *Superior Court* (1969) 1 Cal.3d 314, 321-324 [82 Cal.Rptr. 348, 461 P.2d 628].)" (*Haskett, supra,* 30 Cal.3d at p. 857.)

---

[6] The disapproved language reads as follows: "On the other hand, if two cotenants are present, such as husband and wife, and one gives the police permission to search and the other refuses, it would appear reasonable to hold that the nonconsenting co-occupant's right to privacy should prevail to preclude a valid search." (*People* v. *Reynolds, supra,* 55 Cal.App.3d at p. 369; see also *People* v. *Engel, supra,* 105 Cal.App.3d at p. 498.)

The most recent case is *People* v. *Boyer* (1989) 48 Cal.3d 247 [256 Cal.Rptr. 96, 768 P.2d 610]. There, the defendant was at the police station when his cotenant at the jointly occupied residence gave the police permission to enter and search. Incriminating evidence was found. The Supreme Court held the search lawful: "[T]he search is . . . supported by the independent consent of the cotenant of the residence . . . . When one cotenant with joint control of the area to be searched is present on the premises, he or she may consent to the search despite the absence of others. (*United States* v. *Matlock* (1974) 415 U.S. 164 . . . *People* v. *Haskett* (1982) 30 Cal.3d 841, 856. . . .)" (*People* v. *Boyer, supra,* at p. 276.)

The case before us involves an absent consenting cotenant and present defendants who did not affirmatively agree to the police entry. As the defendants point out, we are faced with a factual situation more closely analogous to those involved in *Tompkins, Duke* and *Shelton,* where the challenged entry and search was deemed unlawful, than to those involved in *Smith, Matlock, Haskett* and *Boyer,* where the challenged entry and search was deemed lawful. While it would be a simple matter to decide this case by adopting the result of the circumstantially similar cases, we have eschewed such a superficial resolution. Instead, we have examined the two factors—the absence of the consenting cotenant and the presence of, and lack of consent by, the defendants—and determined that neither compelled the granting of the defendants' motions.

1. *Absence of the Consenting Co-occupant*

We note first that *Tompkins, Duke,* and *Shelton* do not hold that only a present cotenant may authorize entry. In *Tompkins,* by his actions in closing the door the defendant emphatically expressed his objection to the police entry. The court's statement of its holding, at pages 68-69, is not an unqualified rejection of the notion that an absent cotenant may consent to entry; rather, the court identified the three factors which were essential to the decision: (i) the objection by the defendant; (ii) the lack of an emergency; and (iii) the officer's failure to disclose the purpose for which entry was sought or that he had the consent of the other occupant. In *Duke,* the sole question decided was whether an absent cotenant's consent dispensed with the requirement that the police comply with the "knock/notice" rule of section 844. In *Shelton,* the decision was premised not on the fact that the consenting co-occupant was away from the residence but instead upon the lack of any affirmative expression of consent by the defendant. Thus, none of the cases turned on the absence of the consentor. None establish a flat rule that only a present co-occupant can authorize the police to enter jointly occupied property.

On the other hand, in *People* v. *Smith,* the consent furnished by an absent occupant was deemed sufficient to authorize entry where the defendant was also absent. Other cases have likewise found the absence of the occupant not to be disabling. For example, in *People* v. *Wilcox, supra,* 276 Cal.App.2d 414,[7] the consenting owner was absent, and the owner's stepson, one of the defendants inside the premises, affirmatively objected to the police entry. Nonetheless, the search was upheld because the stepson's temporary possession was inferior to the rights of the absent owner. (*Id.* at p. 418.)

As we see it, the absence of the consenting cotenant is insufficient reason to invalidate an entry. Both *Matlock* and *Haskett* rest upon the concept that one's co-possession of property carries with it the right to permit access, a notion which would seem to make irrelevant the precise locale of the consenting resident at the moment the police actually gain entrance. A co-occupant inside a home may allow entry whether or not the defendant is also inside (*United States* v. *Matlock, supra*; *People* v. *Haskett, supra,* 30 Cal.3d 841; People v. *Meneley* (1972) 29 Cal.App.3d 41, 56 [105 Cal.Rptr. 432]; *People* v. *Linke* (1968) 265 Cal.App.2d 297, 311 [71 Cal.Rptr. 371]), or may enter with the police (*People* v. *Engel, supra,* 105 Cal.App.3d 489, 501). We discern no justification for a rule that would require an occupant with rights in the premises either to remain in the presence of objectionable and potentially dangerous illegal activity (cf. *United States* v. *Bradley* (8th Cir. 1989) 869 F.2d 417, 419) in order to be in a position to open the door when the police arrive or, after having once fled the premises, to join forces with the police and literally "lead the way" into the residence in order to exercise the right of occupancy. If one has "common authority over . . . the premises" (*Matlock, supra,* at p. 171), it is not surrendered when he or she steps into the street. (Cf. *People* v. *Smith, supra,* 63 Cal.2d 779 [an absent cotenant authorized entry; defendant absent].) Graham's rights to her home should not be " 'completely at the mercy of' " Keeling and Veiga. (*Engel, supra,* at p. 501.)

Accordingly, the absence of Graham at the time of Mathis's entry did not vitiate her consent.

---

[7] We have put aside in this opinion extended discussion of cases such as *Russi* v. *Superior Court* (1973) 33 Cal.App.3d 160 [108 Cal.Rptr. 716] and *Vandenberg* v. *Superior Court, supra,* 8 Cal.App.3d 1048, for each involve peculiar facts. In *Russi,* the co-occupant was a probationer subject to warrantless search; in *Vandenberg,* the objector was the son of the consentor, who was subject to his father's "parental authority" as "head of the household" and the owner of the property. (*Vandenberg, supra,* at p. 1055.)

### 2. Defendant's Presence/Lack of Consent

Here, Mathis entered without the affirmative consent of Keeling or Veiga, the co-occupants on the premises at the time.[8] Does this mean the entry was an illegal invasion of their privacy notwithstanding the existence of Graham's consent? Some cases support that view: *People* v. *Shelton, supra,* 60 Cal.2d at p. 745; *Tompkins* v. *Superior Court, supra,* 59 Cal.2d at p. 69; *People* v. *La Peluso* (1966) 239 Cal.App.2d 715, 729 [49 Cal.Rptr. 85].)

We believe current law is otherwise. The language of *Matlock* does not qualify or limit the principle that "any of the co-inhabitants has the right to permit the inspection in his own right" (*Matlock, supra,* 415 U.S. at p. 171, fn. 7 [39 L.Ed.2d at p. 250]). This tenet rests upon the consentor's joint property prerogative and the "risk" assumed by one who shares common premises with another. In *Haskett,* the officers did not ask for the defendant's concurrence before the entry and search was initiated, even though the defendant was readily available. The court quoted *Matlock*'s "assumption of risk" formulation and expressly disapproved contrary dicta in *Engel* and *Reynolds* (see fn. 6, *ante*).

Although the opinion was not cast in terms of "privacy," we read *Matlock* to mean that the consensual mutual occupancy of property constitutes a voluntary relinquishment of the co-occupants' rights of privacy to the extent of the joint occupancy, subject to certain limitations. (*Haskett, supra,* 30 Cal.3d at p. 857.) ■ That view follows from the indisputable notion that the Fourth Amendment, at minimum, "protects individual privacy against . . . governmental intrusion." (*Katz* v. *United States, supra,* 389 U.S. 347, 350 [19 L.Ed.2d at p. 581]; *People* v. *Hamilton* (1985) 168 Cal.App.3d 1058, 1064-1065 [214 Cal.Rptr. 596].) Thus, a police entry is countenanced when it is based upon a co-occupant's consent because by undertaking joint occupancy the defendant either has no "actual (subjective) expectation of privacy," or, if he or she has such expectation, "society is [not] prepared to recognize [it] as 'reasonable.'" (*Katz* v. *United States, supra,* at p. 361, Harlan, J. dis. [19 L.Ed.2d at p. 588].) Those two aspects form the dual test applicable to the assessment of whether a search is unreasonable and therefore violative of the Fourth Amendment. (*Katz, supra; Oliver* v. *United States* (1984) 466 U.S. 170, 177 [80 L.Ed.2d 214, 223, 104 S.Ct. 1735]; *California* v. *Ciraolo, supra,* 476 U.S. 207, 220 [90 L.Ed. 221]; *Holmes* v. *Burr* (9th Cir. 1973) 486 F.2d 55, 57-58.)

*People* v. *Meneley, supra,* 29 Cal.App.3d 41, to some extent presaged *Matlock* and *Haskett* on this issue. There, the joint occupant, defendant's

---

[8] We assume for purposes of this part of our opinion what we decide later on—that Mathis substantially complied with the "knock/notice" requirements of section 844.

wife, admitted the police not only into the home but also into the bedroom where defendant was in the process of dressing. In upholding the entry and search, the court said: "[I]t is well settled that where premises are occupied by more than one person, a search of the portion of the premises jointly possessed is reasonable if consent has been granted by one of the joint occupants who is present at the time of the search [citations, including *People* v. *Smith*]. The joint occupant who is present may consent to an entry and search *although the person whose property is seized and who also has joint control of the premises is not asked for his consent* [citation] or is not present [citation]." (*Meneley, supra,* at p. 56, italics added; see also *United States* v. *Bradley, supra,* 869 F.2d 417, 419 [consenting cotenant was absent; defendant cotenant present but did not object; search upheld].)

We do not decide whether an *express objection* to police entry, articulated by a defendant cotenant present on the premises, will render ineffective another cotenant's consent to the entry.[9] Although *Matlock*[10] and *Haskett*[11] may be read as supporting the position that such an objection will be unavailing, those cases do not unambiguously so state and the earlier authorities are not favorable. (*Tompkins* v. *Superior Court, supra*; *People* v. *La Peluso, supra,* 239 Cal.App.2d 715, 729-730; *People* v. *Reynolds, supra,* 55 Cal.App.3d 357, 369; *People* v. *Fry* (1969) 271 Cal.App.2d 350, 356-357 [76 Cal.Rptr. 718].) "[W]e are unable to find direct authority for the proposition that where both cotenants are present and valid consent of one of them exists nothing further is required." (*Russi* v. *Superior Court, supra,* 33 Cal.App.3d 160, 167.) It would seem *Matlock* and *Haskett* made irrelevant a defendant's express objection to entry, his or her privacy having been surrendered by virtue of the election to share quarters with another.[12]

[9] We emphasize we need not, and do not, decide this point. Here, there was no express objection by any of the occupants to the entry by Mathis before or after his knock and announcements, and any objection by a partygoer once the police were inside the home is irrelevant to any issue raised on this appeal.

[10] "[A]ny of the coinhabitants has the right to permit the inspection in his own right and [ ] the others have assumed the risk that one of their number might permit the common area to be searched." (*Matlock, supra,* 415 U.S. at p. 171, fn. 7 [39 L.Ed.2d at p. 250].)

[11] *People* v. *Haskett, supra,* 30 Cal.3d at page 856, quotes from and cites footnote 7 of *Matlock*. In addition, the officers in *Haskett* initiated the entry and search without first inquiring about whether the defendant went along with his wife's action, even though he was conveniently nearby. Moreover, at one point, the officers did ask for the defendant's consent, which was refused. Nonetheless, the officers resumed the search and subsequently made the incriminating discovery. Defendant urged adoption of "a special rule vitiating the consent of one cooccupant *when the other is present and protests the entry or search.*" (*Haskett, supra,* at p. 856, italics added.) The court rejected the proposition: "[W]e are not so beguiled by changes in the scenery as to lose sight of the principle." (*Ibid.*)

Moreover, as we noted earlier, *Haskett* expressly disapproved the statements in *Reynolds* and *Engel* which subordinated the cotenant's consent to the defendant's objection. (See fn. 6, *ante.*)

[12] Citing *Matlock,* one federal court seems to have taken the position that the defendant cotenant's objection is immaterial. (*United States* v. *Koehler* (1986) 790 F.2d 1256, 1259:

■ In any event, on the specific facts before us we hold neither the presence of the defendants in the home nor the absence of any affirmative expression of consent on their part invalidates the entry.

C.-E.*

. . . . . . . . . . . . . . . . . . . . . .

## II.*

. . . . . . . . . . . . . . . . . . . . . .

## III. DISPOSITION

The Veiga judgment is modified to grant defendant Veiga one day of presentence credit, and the abstract of judgment shall be appropriately amended to reflect such credit. In all other respects, both judgments are affirmed.

Best, Acting P. J., and Baxter, J., concurred.

The petition of all appellants for review by the Supreme Court was denied December 21, 1989.

---

"Consent by a person who possesses common authority over premises or effects is valid as against a non-consenting person with whom that authority is shared.")
 * See footnote, *ante,* page 817.