[No. C011793. Third Dist. Mar. 25, 1993.]

THE PEOPLE, Plaintiff and Respondent, v.
THEODORE ALBERT WILKINS, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

## Counsel

Janet J. Gray, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Shirley A. Nelson and Douglas C. Hamilton, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**PUGLIA, P. J.**—In this prosecution for obstructing and resisting a peace officer in the performance of his duty, we shall hold that the existence or not of exigent circumstances, upon which the People relied to justify the entry of peace officers into defendant's home to arrest him without a warrant, is an issue for the jury invoking the trial court's duty sua sponte to instruct thereon.

Defendant was convicted of willful infliction of corporal injury on a spouse (Pen. Code, § 273.5), taking a peace officer's weapon (baton) while obstructing him in the performance of his duties (Pen. Code, § 148, subd. (b)), and forcibly resisting a peace officer in the performance of his duties (Pen. Code, § 69). (Further statutory references to sections of an undesignated code are to the Penal Code.) On appeal defendant contends the court erred in (1) denying his motion to suppress evidence (§ 1538.5) and (2) failing to instruct sua sponte on the issue of exigent circumstances as it relates to the lawfulness of defendant's arrest and ultimately, to the lawful performance of the officers' duty. We shall deal with these issues in the published part of this opinion.[1] Although we shall conclude the trial court defaulted in its duty sua sponte to instruct on exigent circumstances, we shall further conclude the error was harmless beyond a reasonable doubt. Finding no other reversible error, we shall affirm.

Officer Bruce Donaldson of the Marysville Police Department arrived at 131 Johnson Avenue to investigate a report of a domestic dispute. The victim, Pamela Wilkins, met Donaldson outside the residence. She was "very upset" and "crying uncontrollably." Her face and nose were red. Police Sergeant Kenneth Kauk arrived shortly thereafter. The victim stated she had been in an "altercation" with her husband (defendant) and he "had hit her a few times in the face." She told the officers her nose and neck were sore and requested them "to go inside the residence to arrest [defendant]."

---

[1] Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts III through VII.

The officers instructed the victim to remain outside. They intended to enter the residence and arrest defendant for corporal injury to a spouse. The officers, who were in uniform, knocked and defendant opened the door approximately one-quarter to one-half way. He appeared calm. Donaldson informed defendant they needed to come in and talk with him. Defendant refused to allow more than one officer to enter. Donaldson said both officers needed to come in. Defendant attempted to close the door, but Donaldson blocked it with his foot and hand, forced the door open, and reached for defendant's wrist. Defendant backed away and began flailing his arms and yelling at the officers to get out.

Defendant retreated, Donaldson followed and Kauk got behind defendant and grabbed him by the arms in a "semi-bear hug." Kauk tried to calm defendant but defendant continued to yell at the officers and "lunged forward," grabbing Donaldson's baton. Holding the baton like a baseball bat, defendant "charged at" Donaldson and threatened to kill him. Defendant and the two officers crashed into a wall of the room, bounced off and fell against another wall. The victim, who by this time had entered the residence, shouted at defendant to stop and put down the baton. Defendant eventually lost control of the baton and it fell to the floor where the victim retrieved it.

During the fray, defendant "went for" Donaldson's gun. Donaldson pushed defendant's hand away and drew the gun out of its holster. Defendant again grabbed at the gun. There was more wrestling around until Kauk put pressure on defendant's neck and he stopped struggling. The officers then placed handcuffs on him.

Defendant still refused to cooperate and had to be dragged from the residence. Defendant refused to get into the police car and leg restraints were applied. When he tried to kick the officers, defendant was "maced," forcibly strapped onto an ambulance board and placed in the vehicle. Defendant was transported to a hospital for examination because he complained that his back hurt. During the trip, defendant told an officer: "When this is all over, I will see you in my cross hairs." When asked if this was a threat, defendant indicated: "Damn right, I'm threatening you."

The next morning the victim's injuries were examined and photographed. When asked where she had been struck, the victim indicated her face around the eyes and her chest and stated her leg should be photographed as well. A nurse examined the victim and discovered a small amount of blood in her right nostril.

Defendant was charged with infliction of corporal injury on a spouse (§ 273.5), taking a peace officer's weapon (baton) while obstructing him in

the performance of his duties (§ 148, subd. (b)), attempting to take a peace officer's firearm while obstructing him in the performance of his duties (§ 148, subd. (d)), and forcibly resisting a peace officer in the performance of his duties (§ 69).

Defendant moved to suppress all evidence obtained as a result of the entry into his residence (§ 1538.5). The motion was denied. The matter was tried to a jury which returned a verdict of guilty on all but the charge of attempting to take a peace officer's firearm in violation of section 148, subdivision (d). Imposition of sentence was suspended for three years and defendant was placed on probation.

I

## THE SUPPRESSION MOTION

The principles governing entry and search of a home and those governing entry of and arrest for felony within a home, though sharing the same constitutional provenance, differ in important aspects and are sometimes conflated. Generally, both entry and search of a home may be authorized either by a search warrant or by consent.[2] But entry in order to arrest *and* the actual arrest of the owner within his home are not both authorized alone by a warrant of arrest or by reasonable cause to arrest. The arrest itself is authorized by a warrant of arrest or, absent a warrant, other justification such as reasonable cause to arrest, but the requirements of a lawful entry to arrest are additional and discrete.[3] Thus neither a warrant of arrest nor the existence of reasonable cause to arrest will excuse the arresting officer from compliance prior to entry with section 844.[4] And even though the officer has reasonable cause to arrest and reasonable grounds to believe the suspect is in his home (see § 844), if the officer does not have a warrant of arrest, he may not enter the home to arrest unless there are either exigent circumstances requiring swift action or consent to enter and arrest.

Defendant's section 1538.5 motion sought suppression of all tangible and intangible evidence derived from the detention, arrest and search of defendant, specifically including "[o]bservations of any officers at the detention of

---

[2] Entry pursuant to a search warrant is governed by the notice, demand and refusal requirements of section 1531 and cases interpreting that section.

[3] A warrantless arrest is also justified when "the person arrested has committed a felony, although not in the officer's presence." (§ 836.) Although the jury was instructed on this justification (CALJIC No. 9.24), the People did not rely on it.

[4] Section 844 provides: "To make an arrest, a private person, if the offense is a felony, and in all cases a peace officer, may break open the door or window of the house in which the person to be arrested is, or in which they have reasonable grounds for believing the person to be, after having demanded admittance and explained the purpose for which admittance is desired."

Defendant, arrest of Defendant, and/or search of Defendant." The record does not disclose the officers seized any tangible evidence in the home. The only corporeal seizure was of defendant. The motion was apparently brought to suppress testimony of the observations and sensate impressions of the arresting officers as to the charged violations of sections 69 and 148.

Responding to defendant's section 1538.5 motion, the People sought to show at the suppression hearing that the officers had reasonable cause to arrest defendant for violation of section 273.5 and that the entry to arrest complied with section 844 and was justified both by exigent circumstances and by consent.[5]

■ Defendant challenges the People's showing of reasonable cause to arrest defendant. "Cause to arrest exists when the facts known to the arresting officer would lead a person of ordinary care and prudence to entertain an honest and strong suspicion that the person arrested is guilty of a crime. [Citation.]" (*People* v. *Price* (1991) 1 Cal.4th 324, 410 [3 Cal.Rptr.2d 106, 821 P.2d 610].)

Infliction of corporal injury upon a spouse is defined in section 273.5 as follows:

"(a) Any person who willfully inflicts upon his or her spouse . . . corporal injury resulting in a traumatic condition, is guilty of a felony . . . .

". . . . . . . . . . . . . . . . . . . . . . . . . . .

---

[5]Defendant argues that in the suppression proceedings the People did not rely on exigent circumstances to justify entry and they are therefore foreclosed from relying on it on appeal. Defendant is mistaken. In his written points and authorities supporting suppression, defendant himself argued the entry was not justified by exigent circumstances. The People's written opposition did not mention exigent circumstances but relied on consent. Nevertheless, at the commencement of the hearing the prosecutor stated "the issue is whether or not the officers had probable cause to make an arrest *and enter the house*" (italics added), and the court, observing there was no warrant of arrest, stated, "We either have consent or . . . caught in the emergency response." Finally evidence of circumstances requiring swift action confronting the officers immediately prior to entry was thoroughly developed at the hearing. In contrast to *Green* v. *Superior Court* (1985) 40 Cal.3d 126 [219 Cal.Rptr. 186, 707 P.2d 248], where the most that could be said was that the "potential applicability [of an unarticulated theory] was at least in the air" (at p. 137, fn. 8), the People, in concluding argument, expressly urged exigent circumstances (as well as consent) to justify the entry. In denying the motion, the court ruled the entry was justified on the "additional ground of exigent circumstances, in other words, the commission of a felony outside the officers' presence, but ongoing circumstances which would indicate that there were still dangers present to people. . . ."

Defendant did not object to the court's reliance on exigent circumstances. Nor does he suggest what evidence he was precluded from developing by the claimed lack of notice. The issue of exigent circumstances was raised at the suppression hearing and provided an alternate basis for the court's denial of defendant's motion.

"(c) As used in this section, 'traumatic condition' means a condition of the body, such as a wound or external or internal injury, whether of a minor or serious nature, caused by a physical force."

■ Defendant argues the officers did not have reasonable grounds to believe the victim had suffered an injury resulting in a "traumatic condition." We disagree. Officer Donaldson testified that when he arrived at the residence he found the victim crying uncontrollably. He observed redness about her face and nose and she informed him her husband, defendant, had hit her a few times in the face and that her neck and nose were sore.

Section 273.5 is violated when the defendant inflicts even "minor" injury. Unlike other felonies, e.g., aggravated battery (§ 243, subd. (d)) which require serious or great bodily injury, "the Legislature has clothed persons of the opposite sex in intimate relationships with greater protection by requiring less harm to be inflicted before the offense is committed." (*People* v. *Gutierrez* (1985) 171 Cal.App.3d 944, 952 [217 Cal.Rptr. 616].) The information imparted to the officers and their observations were sufficient to establish probable cause to believe defendant had committed a violation of section 273.5.

Defendant contends the circumstances presented to the officers did not justify a warrantless entry into the home to effect an arrest. Such an entry can be justified only by exigent circumstances or by consent. The People rely on both justifications.

■ A warrantless arrest of a person in his home is "presumptively unreasonable" (*Payton* v. *New York* (1980) 445 U.S. 573, 586 [63 L.Ed.2d 639, 651, 100 S.Ct. 1371]) and prohibited by the Fourth Amendment to the United States Constitution unless the People can establish "exigent circumstances" required an arrest be made before a warrant could be obtained (*Welsh* v. *Wisconsin* (1984) 466 U.S. 740, 750 [80 L.Ed.2d 732, 743, 104 S.Ct. 2091]). "Exigent circumstances" justifying a warrantless, in-home arrest for felony refer to an emergency situation requiring swift action to prevent physical harm to persons or serious damage to property, or to forestall the imminent escape of the suspect or destruction of evidence. (See *Welsh* v. *Wisconsin, supra,* 466 U.S. 740, 748-753 [80 L.Ed.2d 732, 742-745]; *Dorman* v. *U.S.* (D.C. Cir. 1970) 435 F.2d 385, 392-393; *People* v. *Ramey* (1976) 16 Cal.3d 263, 276 [127 Cal.Rptr. 629, 545 P.2d 1333].) "There is no ready litmus test for determining whether such circumstances exist, and in each case the claim of an extraordinary situation must be measured by the facts known to the officers." (*People* v. *Ramey, supra,* 16 Cal.3d 263, 276.)

■ Here, the officers were summoned to the scene shortly after midnight, found the victim crying uncontrollably and learned she had been assaulted and injured by the defendant. The victim was outside the house and obviously in need of shelter. It was reasonable for the officers to conclude her reentry into the home or even her continuing presence on the premises outside the home would spark further violence by defendant.

The officers could not abandon the matter and expose the victim to further harm simply because defendant refused them admittance. Furthermore, under these circumstances, the officers were not constrained to delay until an arrest warrant could be obtained. Given the time of night, the securing of a warrant would necessarily have occasioned some delay and during this period the victim would have been vulnerable to further risk of physical harm. The risk of imminent violence resulting in further physical harm to the victim was an exigent circumstance requiring immediate action. (See *People v. Superior Court (Dai-Re)* (1980) 104 Cal.App.3d 86, 90 [163 Cal.Rptr. 417]; *People v. Mitchell* (1990) 222 Cal.App.3d 1306, 1309-1314 [272 Cal.Rptr. 440].)

Moreover, the officers, who were in uniform, substantially complied with section 844 by knocking and, when defendant opened the door, demanding entry. (See *People v. Galan* (1985) 163 Cal.App.3d 786, 795 [209 Cal.Rptr. 837].)

The People contend the entry and search are also justified by consent. Officer Donaldson testified the victim told him the residence was hers and declared: "My husband is in the house. He hit me. I want him arrested. I want you to go in and talk to him now." At the suppression hearing, the victim denied giving the officers permission to enter the residence. She testified: "I told them that my husband and I were having a fight and that [defendant] had hit me and that I was wanting them to speak with him and possibly make him leave."

■ "[I]n ruling on a motion under section 1538.5 the superior court sits as a finder of fact with the power to judge credibility, resolve conflicts, weigh evidence, and draw inferences, and hence [ ] on review of its ruling by appeal or writ all presumptions are drawn in favor of the factual determinations of the superior court and the appellate court must uphold the superior court's express or implied findings if they are supported by substantial evidence. [Citation.]" (*People v. Laiwa* (1983) 34 Cal.3d 711, 718 [195 Cal.Rptr. 503, 669 P.2d 1278].)

The question whether consent was given by the victim is one of fact. The superior court's finding of consent is supported by substantial evidence, i.e.,

the testimony of Officer Donaldson. However, whether such consent was effective to authorize entry to arrest is a question of law on which we exercise independent judgment. (*People* v. *Veiga* (1989) 214 Cal.App.3d 817, 820 [262 Cal.Rptr. 919].)

█ "[W]here premises are occupied by more than one person, a search of the portion of the premises jointly possessed is reasonable if consent has been granted by one of the joint occupants who is present at the time of the search. . . . The joint occupant who is present may consent to an entry and search although the person whose property is seized and who also has joint control of the premises is not asked for his consent . . . or is not present. . . ." (*People* v. *Meneley* (1972) 29 Cal.App.3d 41, 56 [105 Cal.Rptr. 432], citations omitted.)

Defendant contends the victim's consent was ineffective because she was not "present" in the residence at the time. In *Tompkins* v. *Superior Court* (1963) 59 Cal.2d 65 [27 Cal.Rptr. 889, 378 P.2d 113], Nieman was arrested in or about his car at Norton and Mission Streets. He was asked whether his apartment on Shotwell Street, which he shared with petitioner, contained contraband. Nieman said it did not and gave the officers his apartment key to check for themselves. When the officers arrived, petitioner would not let them enter. They nevertheless broke in and discovered contraband. Petitioner's motion to set aside the information was denied and he sought a writ of prohibition.

The court granted the writ, stating: "Joint occupancy of property, particularly residential property, obviously demands reasonable restrictions on the right of each joint occupant either by himself or through another to exercise full control over the property at all times regardless of the wishes of another joint occupant present on the premises. A joint occupant's right of privacy in his home is not completely at the mercy of another with whom he shares legal possession. . . . Accordingly, we hold that one joint occupant *who is away from the premises* may not authorize police officers to enter and search the premises over the objection of another joint occupant who is present at the time, at least where as in this case, no prior warning is given, no emergency exists, and the officer fails even to disclose his purpose to the occupant who is present or to inform him that he has the consent of the absent occupant to enter." (59 Cal.2d at p. 69, italics added and citations omitted.)

Dictum in *People* v. *Shelton* (1964) 60 Cal.2d 740 [36 Cal.Rptr. 433, 388 P.2d 665], implies that consent of one joint occupant who is present with police outside the premises will not justify the intrusion on the other joint tenant's privacy. (At pp. 745-746.) However, in *People* v. *Haskett* (1982) 30

Cal.3d 841 [180 Cal.Rptr. 640, 640 P.2d 776], the court explained that *Tompkins* and *Shelton* were based more on the intrusiveness of the police conduct than the relative positions of the consenting and objecting cotenants. In *Haskett*, the court upheld a search pursuant to consent of the defendant's wife despite the defendant's express refusal. The wife was present inside the residence at the time while the defendant was standing on the porch outside. In distinguishing *Tompkins* and *Shelton*, the court indicated: "We have recognized that the assumption of risk inherent in co-occupancy has its limits. An entry or search, even though authorized by a co-occupant, may be so intrusive that it belies the conclusion that the parties assumed or even contemplated the risk of its occurrence by deciding to jointly inhabit the subject residence. For instance, an absent cotenant cannot authorize the police to burst into occupied premises unannounced if there is no emergency justifying such a frightening intrusion. [Citations.]

"In this case, however, the police made their identity and purpose known to defendant, in his presence sought and obtained his wife's consent to enter, and validly arrested and removed him from the house before he expressly refused consent to search. Under these circumstances, there is no basis for defendant's contention that his wife's consent was inadequate. [Citations.]" (30 Cal.3d at p. 857.)

The *Haskett* court (30 Cal.3d at p. 857, fn. 6) disapproved dicta in *People v. Engel* (1980) 105 Cal.App.3d 489, 498-500 [164 Cal.Rptr. 454] and *People v. Reynolds* (1976) 55 Cal.App.3d 357, 369 [127 Cal.Rptr. 561] (disapproved on other grounds in *People v. James* (1977) 19 Cal.3d 99, 106, fn. 4 [137 Cal.Rptr. 447, 561 P.2d 1135]) to the effect: "if two co-tenants are present . . . and one gives the police permission to search and the other refuses, it would appear reasonable to hold that the non-consenting co-occupant's right to privacy should prevail to preclude a valid search." (55 Cal.App.3d at p. 369.)

*People v. Veiga, supra*, 214 Cal.App.3d 817, upheld an entry authorized by the consent of an absent cotenant. In *Veiga*, defendant and his sister lived with their grandmother. The sister came home to discover defendant and others in the residence with drug paraphernalia. She left and called the police, instructing them to " 'put a stop to' " the party. (At p. 820.) An officer proceeded to the residence, complied with knock-notice and entered, observing as he did certain contraband items.

The reviewing court first indicated the absence of the consenting cotenant is not sufficient reason to invalidate the entry, explaining: "Both *Matlock* [*United States* v. *Matlock* (1973) 415 U.S. 164, 39 L.Ed.2d 242, 94 S.Ct.

988] and *Haskett* [*supra*, 30 Cal.3d 814] rest upon the concept that one's co-possession of property carries with it the right to permit access, a notion which would seem to make irrelevant the precise locale of the consenting resident at the moment the police actually gain entrance. A co-occupant inside a home may allow entry whether or not the defendant is also inside . . . or may enter with the police. . . . We discern no justification for a rule that would require an occupant with rights in the premises either to remain in the presence of objectionable and potentially dangerous illegal activity . . . in order to be in a position to open the door when the police arrive or, after having once fled the premises, to join forces with the police and literally 'lead the way' into the residence in order to exercise the right of occupancy. If one has 'common authority over . . . the premises'. . . , it is not surrendered when he or she steps into the street." (214 Cal.App.3d at p. 827, citations omitted.) The court held the presence of the defendant in the residence and the failure to request his consent did not vitiate the consent of the absent cotenant. (*Id.*, at p. 830.)

█ In this case, the victim testified she was sitting on the porch of the residence when the officers arrived and she walked across the yard to speak with them, telling them her husband was in the house. The officers testified she asked them to arrest defendant. When the officers approached the front door, she went with them, positioning herself between the officers. Although she apparently did not enter with the officers, she did so shortly thereafter.

This is not a situation of an absent cotenant giving consent. Unlike the "consenting" cotenant in *Tompkins* v. *Superior Court*, the victim here was not "away from the premises." (*Tompkins, supra*, 59 Cal.2d at p. 69). █ █ █ She was on the premises outside the house on the porch and presumably would have entered with the officers had they not instructed her to remain there.[6] █ As explained in *Veiga*, there is no discernable "justification for a rule that would require an occupant with rights in the premises either to remain in the presence of objectionable and potentially dangerous illegal activity . . . in order to be in a position to open the door when the police arrive or, after having once fled the premises, to join forces with the police and literally 'lead the way' into the residence in order to exercise the right of occupancy. (214 Cal.App. at p. 827, citation omitted.)

We conclude the victim had the authority to consent to police entry into the premises to arrest defendant (*People* v. *Haskett, supra*, 30 Cal.3d at p.

---

[6]Premises include both the house and the grounds surrounding it. (See Black's Law Dict. (5th ed. 1979) pp. 1062-1063; Garner, A Dict. of Modern Legal Usage (Oxford Univ. Press, 1987) p. 430.) Since the victim was on the porch of her home, we have no occasion to consider how far the authority to consent of a joint occupant located on more distant parts of the surrounding grounds extends.

857, fn. 6), and this authority was not vitiated nor the victim's joint occupant status negated by defendant's refusal to give consent. The officers reasonably relied on the victim's consent to enter and arrest defendant. Apart from consent, the officers' entry to arrest defendant was justified by exigent circumstances. Finally, the officer's entry complied with section 844 and the arrest of defendant was supported by reasonable cause.

Defendant's suppression motion was properly denied.

## II

### THE TRIAL

 Violation of section 148, subdivision (b) and violation of section 69 each require as an element that the officer at the time of the offense be engaged in the lawful performance of his duties.[7] This means, where the offense is committed upon an officer effecting an arrest, the arrest must have been lawful. (*People v. Gonzalez* (1990) 51 Cal.3d 1179, 1217 [275 Cal.Rptr. 729, 800 P.2d 1159]; *People v. Curtis* (1969) 70 Cal.2d 347, 355-357 [74 Cal.Rptr. 713, 450 P.2d 33]; *People v. Soto* (1969) 276 Cal.App.2d 81, 86-87 [80 Cal.Rptr. 627].)

The jury was instructed on the engaged-in-duty element as follows:

"A peace officer is discharging or attempting to discharge or engaged in the performance of his or her duties if he or she is making or attempting to make a lawful arrest. [CALJIC No. 9.23, as modified.]

"A lawful arrest may be made by a peace officer without a warrant if the person arrested has, in fact, committed a felony, although its commission was not in the presence of the officer.

---

[7]Section 148 reads in relevant part: "(a) Every person who willfully resists, delays, or obstructs any . . . peace officer . . . in the discharge or attempt to discharge any duty of his or her office or employment, when no other punishment is prescribed, is punishable by a fine not exceeding one thousand ($1,000), or by imprisonment in a county jail not exceeding one year, or by both such fine and imprisonment.

"(b) Every person who, during the commission of any offense described in subdivision (a), removes or takes any weapon, other than a firearm, from the person of, or immediate presence of, a . . . peace officer is punishable by imprisonment in the county jail not to exceed one year, or in the state prison. . . ."

Section 69 reads: "Every person who attempts, by means of any threat or violence, to deter or prevent an executive officer from performing any duty imposed upon such officer by law, or who knowingly resists, by the use of force or violence, such officer, in the performance of his duty, is punishable by a fine not exceeding ten thousand dollars ($10,000), or by imprisonment in the state prison, or in a county jail not exceeding one year, or by both such fine and imprisonment."

"A lawful arrest may be made by a peace officer without a warrant whenever the officer has reasonable cause to believe that the person arrested has committed a felony, whether or not a felony has, in fact, been committed.

"The term, 'reasonable cause,' as used in these instructions, means such a state of facts or circumstances confronting the officer at the time of the arrest as would lead a person of ordinary caution or prudence to believe and conscientiously entertain a strong suspicion that the person arrested had committed a felony." (CALJIC No. 9.24, as modified.)

Defendant contends this instruction is incomplete as it fails to address the additional requirement of exigent circumstances. The People rejoin that the instruction is a correct statement of the law as far as it goes and defendant waived any error by failing to request further clarification or amplification. (See *People* v. *Andrews* (1989) 49 Cal.3d 200, 218 [260 Cal.Rptr. 583, 776 P.2d 285].)

■■■ We agree with defendant. In order for the officers to have effected a lawful nonconsensual entry into the house to make a warrantless arrest, they must not only have had reasonable cause to believe defendant had committed a felony but there must also have been exigent circumstances justifying the officers' immediate entry without obtaining a warrant. (*Welsh* v. *Wisconsin, supra,* 466 U.S. at p. 750 [80 L.Ed.2d at p. 743].) The instructional lacuna is not one which can be cured simply by clarification and amplification because the instructions given completely omit to address a material constituent of an element necessary for conviction. (See *People* v. *Rogers* (1971) 5 Cal.3d 129, 137 [95 Cal.Rptr. 601, 486 P.2d 129].) Accordingly, the court had a duty sua sponte to instruct on exigent circumstances.[8]

■■■ "[I]n criminal cases, even in the absence of a request, the trial court must instruct on the general principles of law relevant to the issues raised by the evidence. The general principles of law governing the case are those principles closely and openly connected with the facts before the court, and which are necessary for the jury's understanding of the case." (*People* v. *St. Martin* (1970) 1 Cal.3d 524, 531 [83 Cal.Rptr. 166, 463 P.2d 390], citations omitted.) At a minimum, this requires instruction on the elements of the offense charged. (*People* v. *Sanchez* (1950) 35 Cal.2d 522, 528 [219 P.2d 9].)

---

[8]Defendant does not contend the jury should also have been instructed on consent as it bears on the lawfulness of the entry and arrest. However, under the People's theory of the case, the entry to arrest was justified by both exigent circumstances and consent and there was substantial evidence of consent. Accordingly the criteria of lawfulness include the issue of valid consent and the court had a duty sua sponte to instruct on that issue as well.

In *People* v. *Gonzalez, supra*, 51 Cal.3d 1179, the court indicated lawfulness of the arrest is an element of a resisting arrest offense which normally must be submitted to the jury. "California cases hold that although the court, not the jury, usually decides whether police action was supported by legal cause, disputed facts bearing on the issue of legal cause must be submitted to the jury considering an engaged-in-duty element, since the lawfulness of the [officer] victim's conduct forms a part of the corpus delicti of the offense. [Citations.]" (At p. 1217.) If, however, the arrest is pursuant to a warrant, it is lawful as a matter of law and hence the issue of lawfulness need not be submitted to the jury. (At p. 1218.)

Although the quoted language from *Gonzalez* literally requires submission of the engaged-in-duty element to the jury only where the facts bearing on that element are "disputed," no such limitation has ever to our knowledge been authoritatively recognized. On the contrary, in *People* v. *Figueroa* (1986) 41 Cal.3d 714 [224 Cal.Rptr. 719, 715 P.2d 680], the court held it is error not to submit all elements of a charged offense to the jury, regardless of the state of the evidence. *Figueroa* was a prosecution for securities violation. The Supreme Court concluded it was error to take from the jury the issue whether the instrument in question was a security. The court explained: "It has long been recognized that a trial judge 'may not direct a verdict of guilty no matter how conclusive the evidence.' . . . [¶] The prohibition against directed verdicts 'includes perforce situations in which the judge's instructions fall short of directing a guilty verdict but which nevertheless have the effect of so doing by eliminating other relevant considerations if the jury finds one fact to be true.' . . . [¶] . . . [¶] The rule prohibiting verdicts directed against an accused emanates from the guarantee of due process and the right to a jury trial. Due process 'protects the accused against conviction except upon proof beyond a reasonable doubt of *every fact* necessary to constitute the crime with which he is charged. . . .' " (At pp. 724-725, citations omitted and italics in original.)

In *People* v. *Hedgecock* (1990) 51 Cal.3d 395 [272 Cal.Rptr. 803, 795 P.2d 1260], the court explained *Figueroa* "did not abrogate the question-of-law/question-of-fact distinction in determining whether issues should be submitted to the jury. It did suggest, however, that this distinction plays a relatively limited role in view of a defendant's constitutional right to have a jury determine the existence of all elements of the offense charged. [Citation.]" (At p. 407.) In other words, it matters not whether the issue in question is one of fact or law. Due process requires that it be submitted to the jury. (Accord, *People* v. *Nava* (1989) 207 Cal.App.3d 1490, 1498 [255 Cal.Rptr. 903] [improper to instruct a bone fracture constitutes substantial and significant injury within the meaning of a sentencing enhancement];

*People* v. *Beltran* (1989) 210 Cal.App.3d 1295, 1303 [258 Cal.Rptr. 884] [same]; *People* v. *Jarrell* (1987) 196 Cal.App.3d 604, 607 [242 Cal.Rptr. 219] [improper to direct jury that if it found defendant guilty of burglary it must find the burglary was in the first degree]; *People* v. *Godinez* (1992) 2 Cal.App.4th 492, 502 [3 Cal.Rptr.2d 325] [improper to instruct in prosecution of an alleged aider and abettor that homicide is a reasonable and natural consequence of a gang attack].)

Where, as here, there was no warrant, and, assuming there was no consent to enter, the arrest of defendant in his home was "presumptively unreasonable." (*Payton* v. *New York, supra,* 445 U.S. at p. 586 [63 L.Ed.2d at p. 651].)[9] The existence of reasonable cause to arrest will not alone dispel the presumption of unreasonableness because that is the *minimal* requirement necessary to justify this warrantless arrest for felony. (See *Welch* v. *Wisconsin, supra,* 466 U.S. at p. 753 [80 L.Ed.2d at p. 745].) Thus, lawfulness of this felony arrest inside the home turns not only on reasonable cause but also on exigent circumstances and, because lawfulness of the arrest is an element of the offense charged, both issues must be submitted to the jury.[10]

 Having concluded the court erred in failing to instruct on the existence or not of exigent circumstances, we must decide whether reversal is required. Instructional error affecting an element of the offense warrants reversal unless we are able to conclude beyond a reasonable doubt that the jury's verdict was not affected by the error. (*People* v. *Dyer* (1988) 45 Cal.3d 26, 64 [246 Cal.Rptr. 209, 753 P.2d 1]; *People* v. *Odle* (1988) 45 Cal.3d 386, 414 [247 Cal.Rptr. 137, 754 P.2d 184].)

Under that standard, we conclude beyond a reasonable doubt the verdict would not have been more favorable to defendant had the jury been instructed on exigent circumstances as part of the necessary criteria for determining the lawfulness of the arrest. The evidence on that issue before the jury was substantial and it was not in conflict.

The officers arrived at the scene shortly after midnight in response to a report of domestic violence in progress. They encountered the victim on her

---

[9]Since a warrantless felony arrest outside the home is lawful if based on reasonable cause, the warrantless seizure of defendant within his home based on reasonable cause to arrest is not unreasonable as such. Rather, it is the warrantless and otherwise unauthorized *entry* into defendant's home to effect his arrest (seizure) that renders the arrest unreasonable.

[10]The criteria of lawfulness also include the requirements of section 844 that the officers have "reasonable grounds" [cause] to believe the person to be arrested is in the house and that the officers comply with the notice and demand provisions of section 844. Although no issue is raised in this appeal of the failure to instruct the jury on this issue, the trial court erred in failing so to instruct sua sponte.

porch. She had been assaulted and injured by her husband who was still in the house. The victim had fled from her house and was waiting outside for the police to arrive. The officers had probable cause to arrest defendant for felony violation of section 273.5. Had the officers withdrawn to obtain a warrant instead of acting immediately to arrest defendant, the victim would have been unprotected and exposed to risk of further physical harm. ▄ ██ In light of this substantial, uncontradicted evidence, we are satisfied beyond a reasonable doubt that the instructional omission did not prejudice defendant, i.e., that the verdict of the jury would have been no different even had the erroneously omitted instruction been given.[11]

## III-VII*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## VIII

The judgment is affirmed.

Sparks, J., concurred. Raye, J., concurred in the result.

A petition for a rehearing was denied April 20, 1993, and appellant's petition for review by the Supreme Court was denied July 22, 1993.

---

[11]The evidence before the jury of consent and compliance with section 844 was also substantial and uncontradicted. The arresting officers testified the victim asked them to enter the house and arrest her husband. The victim's testimony conflicted with the officers in many respects. However, although she did not testify she gave consent to enter and arrest, she did not expressly deny it nor is her testimony otherwise in conflict on that point. As to compliance with section 844, the officers were told by the victim that defendant was in the house. They were in uniform, they knocked on the door and defendant answered. Officer Donaldson asked if they could enter and talk to him. Defendant refused and attempted to bar their entrance whereupon a struggle ensued and the officers forcibly entered. Again we are satisfied beyond a reasonable doubt that the verdict of the jury had it been properly instructed on consent and compliance with section 844 would not have been more favorable to defendant.

*See footnote 1, *ante*, page 767.