Filed 12/17/13  P. v. Candelaria CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H039224 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. C1227857) |
| v. | |
| BENJAMIN CANDELARIA, | |
| Defendant and Appellant. | |

Defendant Benjamin Candelaria was convicted by court trial of inflicting corporal injury "resulting in a traumatic condition" on a former cohabitant (Pen. Code, § 273.5, subd. (a)),[1] and the court found true allegations that defendant had suffered a prison prior (§ 667.5, subd. (b)) and a strike prior (§§ 667, subds. (b)-(i), 1170.12).  The court struck the strike prior and committed defendant to state prison for a three-year term.  On appeal, defendant's sole contention is that there is not substantial evidence that his actions resulted in a "traumatic condition."  We reject his contention and affirm the judgment.

**I.  Background**

---

[1]    Subsequent statutory references are to the Penal Code unless otherwise specified.

In March 2011, defendant and Tina Fernandez were homeless and living together under a bridge in San Jose. Keith Thompson was also homeless and living under the same bridge. They slept in shelters made of cardboard boxes and blankets.

Thompson testified at trial that, early in the morning on March 9, 2011, he was awakened by defendant and Fernandez arguing. The argument went on for 20 minutes, then ended, and subsequently resumed. After it resumed, defendant "threw" a half-full two-liter bottle of soda at Fernandez. The bottle did not hit her. Defendant "got in her face," and Fernandez "shoved him back." Defendant responded by punching Fernandez in the upper left arm. He went on to punch her at least a dozen times, mostly in the upper body, and he also kicked her twice. Half of the punches were "full-on square blows" to Fernandez's body. Defendant also threw two rocks at her, and one of the rocks hit her on the left side of her upper thigh. In addition, defendant threw a broom handle at Fernandez, which hit her arm.

Fernandez testified that defendant had hit her, but she could not remember many details. She recalled that he had punched her once or twice in the left side of her face, and also hit her in the right foot, her arm, and her lower left side. Fernandez testified that the blows to her face "didn't even leave a mark." The blow to her foot caused her pain. Fernandez said that the police arrived an hour after the altercation.

San Jose Police Officer Francisco Hernandez made contact with Fernandez after the altercation. He observed that she was "favoring one foot," and she showed him a laceration on her right foot. Hernandez saw a "three-quarter inch laceration to her left forearm, [a] contusion to her left elbow, a half-inch laceration to her right foot, [an] abrasion to her lower back on the left side, and redness to her face . . . ." Hernandez took photographs of Fernandez's injuries. He testified that the injuries "didn't appear to be old." On cross-examination, Hernandez testified that, based solely on one photograph, he could not tell whether the dried blood was "from that morning or it's old."

The prosecution argued that defendant had caused physical injuries to Fernandez's foot and arm. The defense argued that defendant could have been acting in self-defense and that Fernandez had not suffered any physical injuries. The court rejected defendant's self-defense claim and found him guilty.

## II.  Analysis

"Any person who willfully inflicts upon a person who is his or her spouse, former spouse, cohabitant, former cohabitant, or the mother or father of his or her child, corporal injury resulting in a traumatic condition is guilty of a felony . . . ."  (§ 273.5, subd. (a).) "As used in this section, 'traumatic condition' means a condition of the body, such as a wound, or external or internal injury, including, but not limited to, injury as a result of strangulation or suffocation, whether of a minor or serious nature, caused by a physical force."  (§ 273.5, subd. (c).)  Thus, even a minor injury is a "traumatic condition."

"The role of an appellate court in reviewing the sufficiency of the evidence is limited.  The court must 'review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.'  [Citations.]  [¶]  The same standard applies to the review of circumstantial evidence.  [Citations.]  The court must consider the evidence and all logical inferences from that evidence . . . .  But it is the [factfinder], not the appellate court, which must be convinced of the defendant's guilt beyond a reasonable doubt.  [Citation.]  Therefore, an appellate court may not substitute its judgment for that of the [factfinder].  If the circumstances reasonably justify the [factfinder]'s findings, the reviewing court may not reverse the judgment merely because it believes that the circumstances might also support a contrary finding."  (*People v. Ceja* (1993) 4 Cal.4th 1134, 1138-1139.)

3

Defendant contends that there was a lack of evidence connecting his blows to any injuries suffered by Fernandez. We disagree. There was ample evidence that Fernandez had suffered injuries. Hernandez, who arrived an hour after the altercation, testified that he observed a "three-quarter inch laceration to [Fernandez's] left forearm, [a] contusion to her left elbow, a half-inch laceration to her right foot, [an] abrasion to her lower back on the left side, and redness to her face . . . ." Equally so, there was substantial evidence that Fernandez had received blows from defendant at the sites of several of those injuries. Thompson testified that defendant had punched Fernandez in the upper left arm and thrown a broom handle that hit Fernandez's arm. Fernandez testified that defendant punched her once or twice in the left side of her face, and also hit her in the right foot, her arm, and her lower left side.

This testimony provided the necessary link between Fernandez's injuries and defendant's blows. The right foot injury, a laceration, was observed an hour after defendant hit Fernandez on the right foot. Fernandez's abrasion on her lower left side was present an hour after defendant hit Fernandez on her lower left side. Fernandez's face was red an hour after defendant punched Fernandez in the face. (See *People v. Wilkins* (1993) 14 Cal.App.4th 761, 771 [red face is traumatic condition].) Fernandez's lower left arm was lacerated and her left elbow had a contusion an hour after defendant punched Fernandez's upper left arm and hit one of her arms with a broom handle. The fact that Fernandez had injuries at the sites of several of defendant's blows shortly after receiving those blows provided substantial evidence that defendant's blows caused "traumatic condition[s]" to Fernandez.

Defendant puts misplaced reliance on *People v. Beasley* (2003) 105 Cal.App.4th 1078 (*Beasley*). Beasley hit his cohabitant Garrido with a rod on three separate occasions in July 1999, August 1999, and December 1999, and was charged with three section 273.5 counts. At trial, the prosecutor elicited Garrido's testimony that she had suffered bruises "during the summer." (*Beasley*, at p. 1085.) The prosecutor failed to elicit any

4

other evidence of injuries to Garrido. On appeal, Beasley challenged the August and December counts on the ground that there was no evidence of any injury from those incidents. The Court of Appeal agreed. (*Beasley*, at pp. 1085-1086.) *Beasley* bears no similarity to the case before us. In this case, unlike in *Beasley*, there was just one incident, and Fernandez was seen with multiple injuries corresponding to the sites of defendant's blows an hour after the incident.

Defendant also cites *People v. Abrego* (1993) 21 Cal.App.4th 133 (*Abrego*) in support of his argument. *Abrego* is readily distinguishable. The victim in *Abrego* testified that she was not injured by any of the defendant's blows, and the officer testified that he did not observe any injuries. (*Abrego*, at pp. 135-136.) The Court of Appeal found "no evidence of even a minor injury" and deemed the evidence insufficient. (*Abrego*, at p. 138.) Here, in contrast, there was evidence of lacerations, an abrasion, a contusion, and a red face attributable to defendant's blows.

Defendant argues that Hernandez testified that the injuries could have been old. Not so. He testified that *based solely on the photo* of one of the injuries he could not tell if that injury was old. However, he testified that *when he observed the injuries* they did *not* appear to be old.

Finally, defendant argues that, while there was circumstantial evidence connecting the blows and the injuries, this was not the only reasonable inference that could be drawn from that evidence and therefore the trial court was obligated to infer that the blows and injuries were not connected. He suggests that Fernandez's injuries could have been "pre-existing" or self-inflicted during the altercation. We perceive several flaws in defendant's argument. First, it was not a reasonable inference that Fernandez's injuries were pre-existing because Hernandez testified that the injuries did not appear old, and the evidence demonstrated that the locations of the injuries lined up with the targets of defendant's blows. Second, no reasonable inference could be drawn that Fernandez's injuries were self-inflicted because the testimony of Thompson, a eyewitness to the

5

altercation, did not describe any conduct that Fernandez engaged in that could have resulted in injuries to her face, her foot, her upper arm, and her lower left side. Fernandez's actions during the altercation were limited to shoving, hitting, and throwing objects, and there was no evidence that she used any part of her body other than her hands to engage in these actions.

Third, even if there were two reasonable inferences that could be drawn from the evidence, our role as an appellate court would not require us to credit the one that suggested innocence or to find error in the factfinder's decision crediting the one suggesting guilt. "Although it is the duty of the [factfinder] to acquit a defendant if it finds that circumstantial evidence is susceptible of two interpretations, one of which suggests guilt and the other innocence [citations], it is the [factfinder], not the appellate court which must be convinced of the defendant's guilt beyond a reasonable doubt. '"If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also be reasonably reconciled with a contrary finding does not warrant a reversal of the judgment."' [Citations.] 'Circumstantial evidence may be sufficient to connect a defendant with the crime and to prove his guilt beyond a reasonable doubt.' [Citation.]" (*People v. Bean* (1988) 46 Cal.3d 919, 932-933.) Here, the circumstances "reasonably justify" the trial court's finding that Fernandez's injuries were caused by defendant's blows. It follows that substantial evidence supports the court's verdict.

## III. Disposition

The judgment is affirmed.

_____
Mihara, J.

WE CONCUR:

_____
Premo, Acting P. J.

_____
Grover, J.