Filed 9/16/24  P. v. Bennett CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>RONALD RAY BENNETT,<br><br>    Defendant and Appellant. | G062774<br><br>(Super. Ct. Nos. BAF2000509, BAF2101142)<br><br>O P I N I O N |

Appeal from judgments of the Superior Court of Riverside County, Joshua A. Knight, Judge. Affirmed with directions.

Kevin Smith, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Melissa

Mandel and Elana Miller, Deputy Attorneys General, for Plaintiff and Respondent.

*      *      *

In back-to-back trials, a jury convicted Ronald Ray Bennett of carjacking, simple assault, and evasion of a police officer endangering others, and a second jury convicted him of two counts of domestic violence battery causing traumatic condition. In this consolidated appeal, Bennett seeks reversal, on four grounds: (1) insufficiency of the evidence to support the carjacking conviction; (2) insufficiency of the evidence to support the domestic battery conviction concerning an August 2021 incident; (3) sentencing error; and (4) clerical error in the abstracts of judgment. We reject the first three arguments, but we agree the abstracts of judgment need to be corrected.

## FACTS

The first case concerned a crime against Bennett's then-18-year-old son, R.B. (the son). The second case concerned crimes against B.F., who is Bennett's wife and R.B.'s mother (the wife). We summarize the relevant facts of each case separately, below.

## I.

### THE CARJACKING CASE

In the first case, case no. BAF2000509 (the carjacking case), Bennett was charged with carjacking the son's car (Penal Code, § 215, subd. (a); count 1); assaulting the son with force likely to produce great bodily injury (Pen. Code, § 245, subd. (a)(4); count 2); and felony evasion of a police officer endangering others (Veh. Code, § 2800.2; count 3).

In May 2020, the son was driving his family home from a grocery store trip. The son was driving his own car. Bennett was in the front passenger seat, and the wife and their other child, then 12 years old (the daughter), were in the back seat. On the ride home, the son and Bennett began arguing. Bennett had picked up the son's cell phone, located in the center console, and began looking through e-mails and text messages. The son demanded Bennett give him back the phone. Bennett refused, claiming the wife was using the son's phone to communicate with other men and cheat on Bennett.

The son began to pull the car to the side of the road to confront Bennett. At some point, Bennett began punching the son multiple times as he was trying to stop the car. The son fought back, hitting Bennett as well. After pulling over, the son exited the driver's seat and went around to the passenger side to continue the fight. The wife and the daughter also exited the car. The wife pleaded with the men to stop fighting.

When the son approached the passenger side door, Bennett slid across from the passenger's seat to the driver's seat while the car was still running. The wife tried unsuccessfully to take the keys out of the ignition. She told Bennett not to take the son's car. Meanwhile, the son got into the passenger's seat and continued exchanging punches with Bennett. The son also tried to grab the keys from the ignition and thrust the gear shift into "park," but Bennett was able to continue driving.

The car picked up speed, and while it was going 30–40 miles per hour, the son was ejected from the car. At trial, the son and wife both testified the son "fell" out of the car, to the best of their recollection. But a

police detective who responded to the scene testified that the son had said Bennett "pushed" him out of the car. And police bodycam recordings of interviews of the son and the wife on the day of the incident were played for the jury; their statements indicated Bennett had pushed the son out of the car. The son suffered a bloody nose and lip from the fight, as well as bruises and lacerations from the fall. The son testified he was afraid of Bennett, but no threats were made by either of them that day.

The wife contacted Bennett to ask him to return the car. The day after the incident, Bennett was supposed to meet the wife at a nearby convenience store to get the car back, but Bennett drove away when she refused to get in the car with him. The wife then called police to report she spotted the "stolen" car.

A California Highway Patrol (CHP) officer responding to the call saw the car and tried to pull Bennett over. When Bennett kept driving, CHP and the Riverside County Sheriff's Department gave chase for about 35 minutes, with Bennett driving at high speeds through residential neighborhoods and committing a number of traffic violations until the car ran out of gas.

A jury found Bennett guilty on counts 1 and 3. On count 2, the jury acquitted Bennett of assault with force likely to produce great bodily injury, finding him guilty instead of the lesser included offense of misdemeanor simple assault (Pen. Code, § 240).[1]

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

4

## II.

### THE DOMESTIC VIOLENCE CASE

In the second case, case no. BAF2101142 (the domestic violence case), Bennett was charged with two counts of domestic violence battery causing traumatic condition against the wife (§ 273.5, subd. (a); counts 1 & 6).[2] It was also alleged Bennett committed these offenses while out on bail from the charges in the carjacking case, a sentencing enhancement under section 12022.1.

The first domestic violence incident occurred in August 2021 (count 6). Late one night, the wife returned home from work and began arguing with Bennett. Bennett slapped her in the face. The police arrived and took photos of the wife. Two photos of the wife were admitted at trial as exhibit nos. 1 and 2. Trial exhibit no. 2 was a close-up of the wife's face, with the wife turning her lip to reveal a red mark inside her upper lip. At trial, the wife was shown exhibit no. 1 and initially testified she did not see that she had incurred any injuries. When shown exhibit no. 2, however, the wife testified she noticed a cut underneath her upper lip, which occurred when Bennett slapped her.

The second incident occurred a month later, in September 2021 (count 1). Bennett and the wife attended a car show in the afternoon. While there, they drank alcoholic beverages. After the car show, the couple headed to a pool hall to meet friends. While seated in their car in the parking lot of the pool hall, Bennett and the wife had more drinks and began arguing. Bennett was angry the wife had been friendly with a man at the car show.

---

[2] Counts 2 through 5 were dismissed before trial.

The wife testified that Bennett may have slapped her inside the car. After the two had left the car and were on the street, Bennett confronted the wife, accused her of being unfaithful to him, and struck her in the face with the back of his hand, causing her mouth to bleed.

A second, different jury convicted Bennett of both counts of domestic violence battery causing traumatic condition (§ 273.5, subd. (a)).

III.

SENTENCING

At the end of the second trial, the trial court sentenced Bennett in both cases. The People sought a total prison term of nine years eight months, while Bennett asked for a total of five years four months.

As mitigating factors, Bennett stated he suffers from PTSD and that alcohol played a significant role in at least one of the incidents. Bennett lost most of his hearing when he was hit in the head at 17 years old, and he was shot in the face two years later. The trial court, however, did not find he was suffering from a mental or psychological condition. Although the court sympathized with Bennett's PTSD and loss of hearing, the court stated, "I don't find . . . these conditions significantly reduced his culpability." The court found the trauma suffered by Bennett was 22 years ago and thus not a factor in his current crimes.

In considering aggravating factors, the trial court found that in the carjacking case there was a "threat of great bodily harm" and "other acts disclosing a high degree of callousness." In the domestic violence case, the court found Bennett's actions towards his wife "callous."

6

The trial court considered his criminal history and found his convictions "increasing in seriousness." The court noted his criminal history dating back to 1997, which included at least three prior domestic violence convictions and three prison terms. The court acknowledged that before the current offenses Bennett "spent at least close to eight years being crime-free, except for [a] driving on a suspended license offense." Nonetheless, the court stated it did not believe the low term was justified given the "lack of any mitigating circumstances."

The trial court sentenced Bennett to a total of six years four months. In the domestic violence case, Bennett was sentenced on count 1 to the midterm of three years (deemed the principal count) and on count 6 to one year (1/3 of the midterm). In the carjacking case, he was sentenced on count 1 to one year eight months (1/3 of the midterm), on count 2 to 180 days (stayed pursuant to § 654), and on count 3 to eight months (1/3 of the midterm). The court found true the section 12022.1 enhancement but, as requested by Bennett, struck the enhancement. In imposing this sentence, the court largely adopted Bennett's suggested sentence, except that it declined to impose the two-year low term on count 1 in the domestic violence case, instead imposing the three-year midterm. Bennett timely appealed.

DISCUSSION

I.

SUFFICIENCY OF THE EVIDENCE

Bennett contends the evidence was insufficient to support the carjacking conviction and one of the convictions for domestic violence battery causing traumatic condition (count 6). We disagree.

7

*A. Standard of Review*

On a challenge to the sufficiency of the evidence, "we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] We presume every fact in support of the judgment the trier of fact could have reasonably deduced from the evidence. [Citation.] If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding. [Citation.] 'A reviewing court neither reweighs evidence nor reevaluates a witness's credibility.'" (*People v. Albillar* (2010) 51 Cal.4th 47, 60.) In other words, "'the power of an appellate court *begins* and *ends* with the determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the finding of fact.'" (*People v. Lagunas* (2023) 97 Cal.App.5th 996, 1007.)

*B. Carjacking*

Bennett argues there was no substantial evidence that he formed the intent to take the car before using force or fear to do so.

"A conviction for carjacking requires proof that (1) the defendant took a vehicle that was not his or hers (2) from the immediate presence of a person who possessed the vehicle or was a passenger in the vehicle (3) against that person's will (4) by using force or fear and (5) with the intent of temporarily or permanently depriving the person of possession of the

vehicle." (*People v. Magallanes* (2009) 173 Cal.App.4th 529, 534; § 215, subd. (a).)

"The requisite intent—to deprive the possessor of possession—must exist before or during the use of force or fear." (*People v. Gomez* (2011) 192 Cal.App.4th 609, 618, disapproved on other grounds by *People v. Elizalde* (2015) 61 Cal.4th 523, 538, fn. 9.) And although the defendant must "'exert some quantum of force in excess of that "necessary to accomplish the mere seizing of the property"'" (*People v. Hudson* (2017) 11 Cal.App.5th 831, 835), "any force sufficient to overcome a victim's resistance will necessarily be more force than required to seize the property" (*id.* at p. 839). In other words, "if a victim resists during the initial seizure, the force applied is necessarily more than required to seize the property absent resistance; and, if a victim does not resist at the time of seizure, force applied to overcome subsequent resistance is force in excess of that required to effect the initial seizure." (*Ibid.*)

Here, there was substantial evidence Bennett, in taking the car, used force sufficient to overcome the son's resistance. According to both the son and the wife, Bennett punched the son multiple times as he was driving, causing the son to pull over and step out of the car. Bennett then slid over to the driver's seat while the car was moving. Both the wife and the son told Bennett not to take the car. According to the wife, she and Bennett "were fighting over the keys to get them out of the ignition." The son then jumped back into the car. In an attempt to stop the car, the son also tried to pull the keys from the ignition and was ultimately ejected from the car while Bennett was swerving and driving away. The son testified, "I tried to grab the keys

9

out of the ignition while [we were] still fighting. [We were] fighting and trying to control the car at the same time." And according to the police detective who interviewed him, the son stated Bennett had pushed him from the car. On this record, a reasonable jury could have concluded Bennett used force against the son in excess of that necessary to accomplish the mere taking of the car.

Bennett argues the relevant timeframe to determine when force or fear was used began when he crossed over to the driver's seat and began driving the car. He contends the jury rejected the People's theory that he pushed the son out of the car, so there was no evidence to support a finding that he used force or fear when he drove off. Even if the jury had found the son fell out of the car instead of being pushed, there was evidence that Bennett fought off the wife and the son for control of the car keys. That evidence was sufficient to support a finding Bennett took the car by force.

Given the substantial evidence to satisfy the force element, we need not and do not consider whether there was substantial evidence to support a finding Bennett used fear to take the son's car.

*C. Domestic Violence Battery Causing Traumatic Condition*

Bennett contends there was insufficient evidence to convict him of count 6. Specifically, he claims the evidence at most proved he slapped the wife once "with no discernible injury, minor or otherwise, except for a red mark on her upper lip."

It is a felony for a person to "willfully inflict[ ] corporal injury resulting in a traumatic condition" on his or her spouse. (§ 273.5. subds. (a)–(b).) As relevant here, "[a] traumatic condition is a condition of the body such

10

as a wound or internal or external injury, whether minor or serious, caused by physical force." (*People v. Abrego* (1993) 21 Cal.App.4th 133, 137 (*Abrego*); § 273.5, subd. (d).) It includes, for example, "'"sprains, bruises, fractures, dislocation, concussion—indeed *traumata* of all kinds."'" (*Abrego*, at p. 137.) "It is *injury* resulting in a traumatic condition that differentiates this crime from lesser offenses," such as simple assault. (*Ibid.*)

In this case, the wife testified Bennett slapped her in the face. She initially testified she couldn't remember whether she was injured from the slap, but when shown trial exhibit no. 2, the wife confirmed she received an injury to the inside of her top lip. We have reviewed the two trial exhibits depicting the wife's face on the day of the incident. Specifically, exhibit no. 2 shows the wife lifting her top lip to reveal the inner skin and a red mark on the inside of her lip. From this photo, a reasonable jury could conclude the wife suffered a bruise or possibly a puncture to the skin. This is evidence of a traumatic condition. (See, e.g., *People v. Beasley* (2003) 105 Cal.App.4th 1078, 1085 [bruising is sufficient evidence of traumatic condition]; *People v. Wilkins* (1993) 14 Cal.App.4th 761, 771 [redness on face and soreness to face and neck sufficient evidence of traumatic condition].)

In his reply brief, Bennett acknowledges exhibit no. 2 shows a mark on the wife's inner top lip, describing it as "more like a sore or a bruise, not an actual cut or injury." But "[w]hether a reasonable trier of fact could reach a different conclusion based upon the same facts does not mean the verdict is not supported by sufficient evidence." (*People v. Mora and Rangel* (2018) 5 Cal.5th 442, 490.) Evidence of a bruise or redness on the wife's inner

11

lip was enough for a jury to reasonably find a traumatic condition resulted from Bennett's slap.

Finally, Bennett's reliance on the facts of *Abrego*, *supra*, 21 Cal.App.4th 133 is misplaced because they are distinguishable from our case. There, the appellate court concluded there was "no evidence of even a minor injury sufficient to satisfy the statutory definition" of a traumatic condition. (*Id.* at p. 138.) The victim testified that although the defendant struck her, she did not feel pain, "had not been injured or bruised," and did not seek medical treatment. (*Id.* at p. 136.) Although the victim had told a responding police officer that her face and head were sore and tender where the defendant struck her, the officer did not notice any injuries. (*Ibid.*) Here, unlike in *Abrego*, the wife testified to receiving an injury to her lip and there was photographic evidence supporting her testimony.

We thus conclude sufficient evidence supports the conviction on count 6.

## II.

### SENTENCING

Bennett argues that at sentencing the trial court abused its discretion in three ways. First, the court imposed the midterm of three years, instead of the two-year low term, on count 1 in the domestic violence case. Second, the court imposed consecutive, rather than concurrent, prison terms for most of the remaining convictions, and failed to state why. Third, in the domestic violence case, the court relied on the aggravating factor that Bennett had "pushed" his son out of the car—a fact the jury did not find to be true and, in any event, could not be considered for sentencing on the

unrelated domestic violence conviction. But because Bennett failed to object on these grounds below, we conclude he has forfeited them on appeal. Even if we were to consider the merits, we would conclude the arguments fail.

A criminal defendant who did not object to the sentence at trial "'may not, on appeal, raise "claims involving the trial court's failure to properly make or articulate its discretionary sentencing choices."'" (*People v. Scott* (2015) 61 Cal.4th 363, 406.) Forfeited objections include ""'cases in which the stated reasons allegedly do not apply to the particular case, and cases in which the court purportedly erred because it double-counted a particular sentencing factor, misweighed the various factors, or failed to state any reasons or give a sufficient number of valid reasons."'" (*Ibid.*) At the sentencing hearing, the trial court announced its intended sentence and stated its reasoning, and counsel had the opportunity to object. Although trial defense counsel asked clarifying questions, he did not object on the grounds that Bennett asserts on appeal. For this reason, his claims are forfeited on appeal.

Even if we were to consider the merits, we would conclude Bennett failed to show the trial court's sentence choices were an abuse of discretion. When a lawful sentence is challenged on appeal, "we are guided by two fundamental precepts. First, "'[t]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review.'" [Citations.] Second, a "'decision will not be reversed merely

13

because reasonable people might disagree.""" (*People v. Carmony* (2004) 33 Cal.4th 367, 376–377 (*Carmony*).)

Bennett's first complaint concerns the imposition of the three-year midterm sentence on count 1 in the domestic violence case. He contends the trial court impermissibly relied on the aggravating factor of "callousness" from the unrelated carjacking case. Bennett's third complaint is related to his first: He argues the court impermissibly relied on the aggravating factor that he had "pushed" his son out of the car when sentencing him on the unrelated domestic violence conviction. Although the court stated Bennett displayed a "high degree of callousness" by pushing his son, nowhere in the record does the court state it was choosing the midterm sentence for the domestic battery conviction in part because of this aggravating factor. For this reason, Bennett fails to show the court abused its discretion. (*Carmony, supra*, 33 Cal.4th at pp. 376–377 [sentencing court presumed to achieve legitimate sentencing objectives].) And as we will discuss, *infra*, the court could have properly considered this aggravating factor for another reason: to impose consecutive prison terms for the other convictions.

Bennett's second complaint concerns the trial court's failure to state why it imposed consecutive terms for count 6 in the domestic violence case and counts 1 and 3 in the carjacking case, and its alleged abuse of discretion in doing so. Unless expressly prohibited by another statute, a sentencing court has the discretion under section 669 to impose concurrent or consecutive terms for multiple convictions. (*People v. Woodworth* (2016) 245 Cal.App.4th 1473, 1479.) The court generally must state its reasons for its sentencing choice on the record. (§ 1170, subd. (c); *People v. Scott* (1994) 9

14

Cal.4th 331, 349.) But it is precisely because the court did not state reasons for imposing consecutive terms and because Bennett failed to object below that Bennett cannot now show the court abused its discretion. (*Carmony, supra,* 33 Cal.4th at pp. 376–377 [sentencing court presumed to achieve legitimate sentencing objectives]; *People v. Coleman* (2024) 98 Cal.App.5th 709, 725 ["Defendant's citation to a silent record is insufficient to meet his burden to demonstrate an abuse of discretion"].)

In any event, "[o]nly a single aggravating factor is required . . . to impose a consecutive sentence." (*People v. Osband* (1996) 13 Cal.4th 622, 728–729.) Such factors include, for example, whether "[t]he crimes and their objectives were predominantly independent of each other;" whether they "involved separate acts of violence or threats of violence;" whether they "were committed at different times or separate places"; and "[a]ny circumstances in aggravation or mitigation, whether or not the factors have been stipulated to by the defendant or found true beyond a reasonable doubt at trial by a jury or the judge in a court trial." (Cal. Rules of Court, rule 4.425(a)–(b).) Here, the court described Bennett's crimes against his wife and son to be "callous," and it could have properly relied on this aggravating factor to impose consecutive prison terms.

In sum, Bennett has not met his burden of showing the court's sentencing decisions were irrational or arbitrary. We thus conclude the court considered the relevant sentencing factors. (See Cal. Rules of Court, rule 4.409 ["Relevant factors enumerated in these rules must be considered by the sentencing judge, and will be deemed to have been considered unless the record affirmatively reflects otherwise"].)

## III.

### ABSTRACT OF JUDGMENT

Finally, Bennett argues the abstracts of judgment do not accurately reflect the trial court's oral pronouncement of sentence. The People concede the issue, and we accept the concession.

At the oral pronouncement of judgment, the trial court awarded Bennett a total of 57 days in the carjacking case (50 days of actual time plus 7 days of conduct credit) and a total of 412 days in the domestic violence case (358 days of actual time plus 54 days of conduct credit). The abstracts of judgment, however, reversed these numbers—with the abstract for the carjacking case showing 412 total days and the abstract for the domestic violence case showing 57 total days. On remand, the abstracts of judgment should be amended to reflect the correct custody credits. (*People v. Mitchell* (2001) 26 Cal.4th 181, 185.)

### DISPOSITION

The matter is remanded to the trial court with the following instructions. In case no. BAF2000509, the court is instructed to correct the abstract of judgment, filed August 31, 2022, to reflect 57 days of total credits (50 days of actual time plus 7 days of conduct credit) as of the August 26, 2022, hearing. In case no. BAF2101142, the court is instructed to correct the abstract of judgment, filed August 31, 2022, to reflect 412 days of total credits (358 days of actual time plus 54 days of conduct credit) as of the August 26, 2022, hearing. The court is further instructed to prepare amended abstracts of judgment for both cases and forward certified copies to the Department of

16

Corrections and Rehabilitation. In all other respects, the judgments are affirmed.


                              DELANEY, J.

WE CONCUR:


O'LEARY, P. J.


BEDSWORTH, J.