Filed 2/1/24  P. v. Downs CA2/3
Opinion following transfer from the Supreme Court

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DAVID DOWNS,<br><br>    Defendant and Appellant. | B315593<br><br>(Los Angeles County<br>Super. Ct. No. TA150279) |

APPEAL from an order of the Superior Court of Los Angeles County, Connie R. Quiñones, Judge.  Affirmed.

Teresa Biagini, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Zee Rodriguez and John Yang, Deputy Attorneys General, for Plaintiff and Respondent.

The trial court found that David Downs violated his probation by assaulting his girlfriend.  In making that finding, the trial court partly relied on the victim's and another witness's out-of-court statements admitted via the testimony of police officers and their bodycam video.  Downs appealed, contending that admitting the statements violated his due process right to confront and to cross-examine witnesses, and, in any event, there was insufficient evidence he violated the terms of his probation.  We affirmed the judgment, but our California Supreme Court granted review.  The court then issued *People v. Gray* (2023) 15 Cal.5th 152, 169 (*Gray*), which held that hearsay qualifying as a spontaneous statement is not categorically admissible at a probation revocation hearing, and the trial court instead must weigh, among other things, the government's showing of good cause against the defendant's confrontation rights.  The court has transferred the matter to us with the direction to reconsider it in light of *Gray*.  Doing so, we conclude that any error in admitting the out-of-court statements was not prejudicial, so we affirm the order.

## BACKGROUND

I.     Downs's plea and suspended sentence

In 2019, Downs was charged with battery with serious bodily injury (Pen. Code,[1] § 243, subd. (d); count 1) and assault with a dangerous or deadly weapon (§ 245, subd. (a)(1); count 2).  As to count 2, the information alleged that Downs personally inflicted great bodily injury (§ 12022.7).  The information further

---

[1]     All further undesignated statutory references are to the Penal Code.

2

alleged that Downs had two prior convictions within the meaning of the Three Strikes law and two prior prison terms under section 667.5, subdivision (b).

On June 17, 2020, Downs pled no contest to count 2 and admitted the great bodily injury allegation.[2] That same day, the trial court sentenced Downs to seven years in prison, execution of sentence suspended, and placed him on three years' formal probation on various terms and conditions, including that he obey all laws. When Downs later failed to report to probation and to comply with his financial obligations, probation was revoked and reinstated on the same terms and conditions in March 2021.

II.     The probation revocation hearing

Downs was thereafter arrested for domestic violence with injury (§ 273.5, subd. (a)), and a contested probation revocation hearing was held. At the outset of the hearing, the prosecutor represented that the victim, Nicole M., had been subpoenaed but would not come to court because she had to work. And the prosecutor could not ask for a body attachment due to a District Attorney policy. Defense counsel objected to going forward and to any evidence as hearsay and lacking foundation. The trial court denied the motion to dismiss, overruled the objections, and transferred the matter for a probation hearing to be held later that afternoon.

At the hearing, neither Nicole nor her adult daughter Jasmine, who had witnessed some of the relevant events, testified. Officer Timothy Wolleck testified that he had spoken to Nicole that morning of the hearing, and she had confirmed

---

[2]     The trial court dismissed the remaining count and allegations.

3

receiving the subpoena. But she would not be able to come to court because she had to work. Her and Jasmine's statements were then admitted via the police officers' testimony and bodycam video.

Officers Zachary Ikeda and Cesar Castaneda testified. Officer Ikeda testified that just after midnight on July 12, 2021, they responded to a domestic battery report. The victim's daughter, Jasmine, had called 911 and was the first person the officer met when he arrived at the entrance to an apartment complex. Officer Ikeda described Jasmine, who was pregnant, as "a bit frantic" because she was "telling us that her mother and [mother's] boyfriend were in an altercation" and "needed us to go up to their apartment." Jasmine said that her mother (Nicole) and Downs (mother's boyfriend) had been and were "still arguing at that moment while we were speaking" and there were "hands on the other party." Officer Ikeda testified that they could hear throughout the courtyard loud arguing, which Jasmine said was her mother and Downs. Jasmine said that her mother had a "busted lip." She also demonstrated how Downs had his hands around her mother's neck.

Although Jasmine wanted the officers to go upstairs immediately, protocol required them to wait for another police unit to arrive. After that second unit arrived, the officers went to the victim's apartment, and she answered the door. The victim said that earlier that day Downs had taken her car keys, phone, and identification.[3] Initially, Nicole was calm, but then she started crying and shaking. She was concerned about getting her property back.

---

[3] When Downs was booked, the keys were found on him.

4

Officer Castaneda also talked to Downs, who was still in the apartment. Downs initially said Nicole was his girlfriend and then later said she was just a friend with whom he stayed from time to time. He admitted that he had grabbed Nicole in a bear hug.

Officer Castaneda said that Nicole had a cut on her lip and bruising on her arm from where Downs had grabbed her. The officer photographed Nicole's arm but described the bruise on her arm as more "vibrant" in person than in the photograph. The officer also took a photograph of Nicole's inner lip.

Based on this evidence, the trial court found that Downs violated the terms of his probation and executed the previously suspended sentence of seven years.

III.   Downs's appeal

Downs appealed the order, contending, among other things, that admitting Nicole's and Jasmine's statements violated his due process rights. We affirmed the order, finding that Nicole's and Jasmine's statements were spontaneous statements under Evidence Code section 1240 and admitting them under that hearsay exception did not violate Downs's due process rights. (*People v. Downs* (Oct. 24, 2022, B315593) [nonpub. opn.].)

Downs petitioned the California Supreme Court for review, it granted the petition on the issue of whether admitting the statements violated Downs's due process and confrontation rights, and deferred consideration pending disposition of a related issue in the lead case. The court issued *Gray*, *supra*, 15 Cal.5th 152 and transferred the matter to us with directions to vacate our decision and to reconsider the cause in light of *Gray*.

5

## DISCUSSION

I.     Admissibility of statements under the due process clause

In his supplemental brief, Downs contends that admitting the victim's statements violated his due process rights, as clarified by *Gray*, *supra*, 15 Cal.5th 152.  As we now explain, we conclude there was no error in admitting Jasmine's testimony and that any error in admitting the victim's statements was harmless.

*Gray* addressed whether hearsay qualifying as a spontaneous statement under Evidence Code section 1240 is always admissible at a probation revocation hearing without considering the balance of relevant interests.[4]  The court first reiterated the general principle that a defendant's right to confront witnesses at a probation revocation hearing is grounded in due process principles, and that right cannot be obviated except on a finding of good cause not to allow confrontation. (*Gray*, *supra*, 15 Cal.5th at pp. 163–164.)  No categorial exception to the good cause finding for spontaneous statements exists. Instead, trial courts must engage in a case-by-case, "comprehensive, holistic approach."  (*Id.* at p. 169.)

*Gray* then approved the holistic approach it had previously articulated in *People v. Arreola* (1994) 7 Cal.4th 1144.  *Arreola*, at pages 1159 to 1160, held that good cause is met "(1) when the declarant is 'unavailable' under the traditional hearsay standard [citation], (2) when the declarant, although not legally

---

[4]     In overruling Downs's objections, the trial court here did not state that it was basing its ruling on Evidence Code section 1240, but the parties on appeal do not dispute that statements were admitted under this theory.

6

unavailable, can be brought to the hearing only through great difficulty or expense, or (3) when the declarant's presence would pose a risk of harm (including, in appropriate circumstances, mental or emotional harm) to the declarant." *Arreola* further explained that the showing of good cause for dispensing with the live testimony requirement must be considered with "other circumstances relevant to the issue, including the purpose for which the evidence is offered (e.g., as substantive evidence of an alleged probation violation, rather than, for example, simply a reference to the defendant's character); the significance of the particular evidence to a factual determination relevant to a finding of violation of probation; and whether other admissible evidence, including, for example, any admissions made by the probationer, corroborates the former testimony, or whether instead the former testimony constitutes the sole evidence establishing a violation of probation." (*Id.* at p. 1160.)

When the trial court here found Nicole's and Jasmine's statements admissible, *Gray* had not been decided, and therefore the trial court had no occasion to apply *Arreola*'s balancing test to determine whether the People had established good cause to present their statements via the bodycam video. Because that is a fact-driven inquiry that the parties did not develop, we would normally remand the matter for the trial court to reconsider the matter.

However, remand is unnecessary because any error in admitting Nicole's statements and bodycam video was harmless beyond a reasonable doubt. (See generally *People v. Aranda* (2012) 55 Cal.4th 342, 363 [federal constitutional errors subject to review under *Chapman v. California* (1967) 386 U.S. 18].)

That is, Jasmine's statements established that Downs violated the terms of his probation, and admitting her statements did not violate Downs's due process rights. The confrontation clause prohibits admission of *testimonial* out-of-court statements against a defendant and not *nontestimonial* ones. (*Crawford v. Washington* (2004) 541 U.S. 36.) Statements are testimonial when the circumstances objectively indicate that there is no ongoing emergency, and the interrogation's primary purpose is to establish or prove past events potentially relevant to later criminal prosecution. (*Ohio v. Clark* (2015) 576 U.S. 237, 244.) But statements made in the course of a police interrogation under circumstances objectively indicating that the interrogation's primary purpose is to enable police to meet an ongoing emergency are not testimonial. (*Ibid.*) We independently review whether a statement is testimonial. (*People v. Ramirez Ruiz* (2020) 56 Cal.App.5th 809, 825.)

Here, when officers arrived at the apartment complex, Jasmine met them at the lobby and told them that she had just returned from the market and her mother showed Jasmine her injury.[5] Jasmine said that Downs had assaulted her mother, and Jasmine demonstrated with her hands how it happened. Therefore, there was evidence that Jasmine witnessed some part of an altercation between her mother and Downs because Jasmine was able to demonstrate how it happened. And although it appears that Jasmine did not see Downs hit Nicole's mouth, Jasmine did see the injury the assault caused.

Jasmine made these statements while the emergency was ongoing. When the police officers arrived, Nicole was still in the

---

[5] The officer initially reported a lip injury but during trial corrected the record to reflect the cut was to her tongue.

8

apartment with Downs, and the officers themselves could hear loud arguing, which Jasmine confirmed was Nicole and Downs. Because the officers thought there was a risk, they called for a second unit to come before going to Nicole's apartment. Accordingly, Jasmine's statements were not testimonial and would have been admissible at a criminal trial. Because *Gray*, *supra*, 15 Cal.5th at page 171, acknowledged that its rule did not give probationers greater rights than criminal defendants, Jasmine's statements were admissible at the probation revocation hearing, and their admission did not violate due process.

II.    Sufficiency of the evidence

Next, Downs argues that reversal is required because there was insufficient evidence Nicole suffered a traumatic condition to her body. We disagree.

After finding that a defendant has violated probation, a trial court has discretion either to reinstate probation on the same or modified terms or to terminate probation and commit the defendant to prison "if the interests of justice so require." (§ 1203.2, subd. (b).) We review the trial court's order for abuse of discretion and review factual findings for substantial evidence. (*People v. Butcher* (2016) 247 Cal.App.4th 310, 318.) The facts supporting a probation revocation must be proved by a preponderance of the evidence. (*Gray*, *supra*, 15 Cal.5th at p. 162.)

A person who willfully inflicts corporal injury resulting in a traumatic condition on a victim with whom the person has or had a dating relationship is guilty of a felony. (§ 273.5, subds. (a), (b).) A "traumatic condition" is a bodily condition, "such as a wound, or external or internal injury, including, but not limited

9

to, injury as a result of strangulation or suffocation, whether of a minor or serious nature, caused by a physical force." (*Id.*, subd. (d).) Even minor injuries may give rise to a violation of section 273.5, subdivision (a). (*People v. Abrego* (1993) 21 Cal.App.4th 133, 137–138.)

There was sufficient evidence Nicole suffered a traumatic injury to her body. Jasmine saw Downs put his hands on her mother. And although Jasmine did not see him hit her mother's mouth, Jasmine saw an injury to her mother's mouth area. Indeed, Downs's counsel concedes in a supplemental brief that Jasmine heard her mother and Downs arguing, saw Downs "put his hands around her mother's neck," and saw her mother's injury. Also, Downs admitted he had grabbed Nicole in a bear hug. Officer Castaneda testified that he saw a cut on Nicole's lip and bruising on her arm from where Downs had grabbed her. Such bruising and a small cut are traumatic conditions. (See, e.g., *People v. Beasley* (2003) 105 Cal.App.4th 1078, 1085 [bruising is sufficient evidence of traumatic condition]; *People v. Wilkins* (1993) 14 Cal.App.4th 761, 771 [redness on victim's face and soreness to face and neck sufficient evidence of traumatic condition].) And although these injuries are not apparent in the photographs the officer took, this does not negate the other evidence of traumatic condition. Rather, the lighting may not have been adequate, and Officer Castaneda said that Nicole's injury was more vibrant than what the photograph reflected.

III. The trial court did not fail to exercise its sentencing discretion

Downs's final argument is that the trial court erroneously thought it lacked discretion to reinstate probation. (See, e.g., *People v. Downey* (2000) 82 Cal.App.4th 899, 912 [remand proper

where sentencing choice was based on misunderstanding of law].) He bases this argument on the trial court's following statement: "So based on the evidence that was presented here—primarily through Castaneda, and the video, the body cam, the court—you know, *the court has no choice*. Seven years suspended is what you bargained for after your case was bargained down from a third strike, serious felony, down to a 245 plus G.B.I. in this matter and that's why you got the seven years." (Italics added.)

By this, the trial court was not saying it lacked discretion to impose anything but the suspended sentence. In context, the trial court was saying that the evidence, which the trial court referred to, showed that Downs had violated the terms of probation. Based on the evidence, the trial court felt compelled to exercise its discretion to revoke probation and impose the suspended sentence. We therefore decline to find, based on a narrow reading of a single, terse comment, that the trial court misunderstood the scope of its sentencing discretion.

## DISPOSITION

The order is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EDMON, P. J.

We concur:

LAVIN, J.

EGERTON, J.